[No. E053775. Fourth Dist., Div. Two. Feb. 14, 2012.]

In re A.A., a Person Coming Under the Juvenile Court Law.
RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,
Plaintiff and Respondent, v.
A.B., Defendant and Appellant.

**COUNSEL**

William D. Caldwell, under appointment by the Court of Appeal, for Defendant and Appellant.

Pamela J. Walls, County Counsel, and Anna M. Deckert, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**RAMIREZ, P. J.**—A.A., the minor, was removed from his mother's custody in 2008 when she was arrested on a federal warrant and was placed in his father's custody, with reunification services for the mother (mother). While mother was still imprisoned, the court terminated dependency jurisdiction, awarding custody to the father (father). However, a month later, the dependency was reactivated based on new allegations that the minor was physically abused by father, while mother was still serving her federal sentence. This time the court authorized services for father, but not mother. When father failed to reunify, services were terminated and the matter was set for a hearing to select and implement a permanent plan of adoption. (Welf. & Inst. Code,[1] § 366.26.) Mother filed a request to modify the order denying her services (§ 388), which was heard and denied at the section 366.26 hearing, and the juvenile court proceeded to terminate parental rights. Mother appealed.

---

[1] All subsequent statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

On appeal, mother asserts (1) her constitutional rights were violated when the court did not consider placing A.A. in her custody at the disposition hearing on the subsequent petition pursuant to section 361.2, and (2) because of this failure, the order denying her section 388 petition was erroneous. We affirm.

## BACKGROUND

A.A. originally came to the attention of the Riverside County Department of Public Social Services (DPSS) in 2008 when he was four years old, along with his then 10-year-old sister, J.R.,[2] when mother was arrested on a federal warrant for drug charges following a "sweep" by law enforcement. A dependency petition was filed alleging neglect and failure to protect due to mother's incarceration, along with her history of drug use and mental illness (§ 300, subd. (b)), as well as alleging her inability to provide for the children due to her incarceration, and the unknown whereabouts of the fathers of the children.[3] After locating and assessing the home of A.A.'s father, N.A., the minor was detained in that home on May 23, 2008. On June 19, 2008, at the jurisdiction hearing, A.A. was declared a dependent on all the allegations pertaining to mother and was placed with father with maintenance services. (§ 364.) Reunification services were ordered for mother.

At the six-month status review hearing held on April 1, 2009 (§ 366.21, subd. (e)), the court awarded sole legal and physical custody of A.A. to father, with directions to dismiss the dependency upon the filing of family law orders. However, the following month, DPSS filed a "reactivated petition" when it was learned A.A. had been beaten by father with a belt, leaving welts. The reactivated petition alleged physical abuse by father (§ 300, subd. (a)), as well as neglect and failure to protect or provide necessities by both mother and father (§ 300, subd. (b)), and an allegation that mother had left the minor without any provision for support (§ 300, subd. (g)). The petition also included an allegation under section 300, subdivision (b) that the parents have a history with child protective services but failed to benefit from services.

The minor was detained in the home where his older sister was placed. Mother informed the social worker that she wanted her aunt considered for relative placement, and indicated that there were no other relatives to

---

[2] A permanent plan of guardianship was ordered for the minor's older sister, J.R., on March 23, 2010. J.R.'s placement and permanent plan are not the subject of this appeal. J.R. is mentioned only where relevant to the chronological history or the issues raised in mother's appeal.

[3] A.A. and J.R. have different fathers. Neither father is involved in this appeal.

consider. However, that aunt had been assessed previously by the relative assessment unit, and her home had been found to be inappropriate for placement.[4]

On September 22, 2009, the juvenile court conducted the combined jurisdiction and disposition hearing. As to the allegations against both parents, the court made true findings that A.A. was a child who came within the provisions of section 300, subdivisions (a), (b), and (g).[5] The court then made findings under section 361, subdivision (c)(1) and (5) as to mother, and made findings under section 361, subdivision (c)(1) as to N.A., before removing custody from both parents. As to mother, no services were ordered because she was in prison for five years. (§ 361.5, subd. (e)(1).)

On September 23, 2010, the court conducted the 12-month status review hearing. (§ 366.21, subd. (f).)[6] The court terminated father's reunification services and scheduled a hearing pursuant to section 366.26. At the hearing, mother's counsel informed the court that A.A. was with someone mother approved of, and that she was submitting on the matter being set (for a hearing pursuant to § 366.26). Nevertheless, after the hearing, mother filed a notice of intent to file a writ petition on October 12, 2010. The petition was dismissed on December 8, 2010, for failing to file a writ petition. (Cal. Rules of Court, rule 8.452(c)(1).)

On January 21, 2011, mother filed a petition to modify a prior order (§ 388) by way of a JV-180 form for a request to change court order. In support of the petition, mother asserted the existence of changed circumstances, referring to several programs mother had completed while incarcerated. On January 24, 2011, the court continued the section 366.26 hearing, and conducted a postpermanency review hearing. (§ 366.3.) In connection with that hearing, mother's counsel signed a stipulation regarding the postpermanency planning hearing and order on her behalf. Among other matters, the stipulation agreed that the extent of mother's progress towards alleviating or mitigating the causes necessitating placement had been "none."

On April 11, 2011, the court denied mother's section 388 petition for modification. The court then conducted the section 366.26 hearing to select

---

[4] The jurisdiction report prepared in connection with the original dependency petition indicated that DPSS evaluated the homes of three relatives of mother, including the aunt in question, and one nonrelative extended family member. The maternal aunt's home had deficiencies, including a household member who required an exemption, which was not obtained, apparently.

[5] The clerk's minutes refer only to true findings under section 300, subdivisions (b) and (g). However, at the hearing, the court clearly sustained the petition *in its entirety*.

[6] The clerk's minutes incorrectly refer to this hearing as a six-month review pursuant to section 366.21, subdivision (e).

and implement the permanent plan of adoption. Mother was present at the hearing, and objected to the proposed termination of parental rights, but did not testify. Mother's counsel argued in support of mother's request for selection of a permanent plan of guardianship. Specifically, mother relied on the beneficial parent-child relationship (§ 366.26, subd. (c)(1)(B)(ii)), and the sibling relationship (§ 366.26, subd. (c)(1)(B)(v)) exceptions to adoptability. The court found the minor was adoptable and that termination of parental rights would not be detrimental to him. The court then terminated the parental rights of both parents. On June 3, 2011, mother appealed from the judgment terminating parental rights.

## DISCUSSION

1. *The Juvenile Court Was Not Required to Consider Placing A.A. with Mother Where She Was Not a Nonoffending Parent Pursuant to Section 361, Subdivision (c), and Where Custody Had Previously Been Removed Upon a Finding of Risk Which Had Not Been Alleviated.*

Mother asserts that when A.A. was initially removed from father's custody at the proceedings on the reactivated dependency petition, she became the nonoffending noncustodial parent entitled to custody and was able to arrange for care of the minor by family members. She thus asserts that the court's failure to consider placement of A.A. in her custody, pursuant to section 361.2, violated her constitutional rights. She asserts the error is a pure issue of law which may be raised for the first time on appeal despite the failure to challenge the error following the disposition order respecting the reactivated petition. We disagree.

There are three problems with mother's argument. First, mother forfeited the issue because she did not request custody at the disposition hearing on the reactivated petition. Second, mother was neither a nonoffending nor noncustodial parent where allegations of neglect and failure to protect were made against mother in the reactivated petition (§ 361, subd. (c)), and the juvenile court had previously removed custody from her based on a finding of detriment, precluding any consideration for placement pursuant to section 361.2. Third, because DPSS had investigated the only relative suggested by the incarcerated mother (whose sentence was then calculated to expire in 2014), and had previously determined that the home was inappropriate, the court was not required to engage in the futile act of considering placing the minor in mother's custody.

### a. *General Legal Principles*

■ Section 361.2, subdivision (a), provides in part that when a court orders removal of a child pursuant to section 361, the court shall first

determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of section 300, who desires to assume custody of the child. The section goes on to provide that if that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child. (§ 361.2, subd. (a).)

■ The term "custody" as used in section 361.2, refers to the parent's right to make decisions pertaining to the child and to have legal possession of the child. (*In re Austin P.* (2004) 118 Cal.App.4th 1124, 1130–1131 [13 Cal.Rptr.3d 616].) "Placement" refers to the address where the child shall live during the dependency proceeding. (*Id.* at p. 1131.) Thus, under section 361.2, subdivision (a), the court examines whether it would be detrimental to temporarily place a child with the nonoffending noncustodial parent; under subdivision (b) of section 361.2, the court decides whether that placement should be permanent and whether the court's jurisdiction should be terminated. (*Austin P.*, at p. 1131.)

■ In enacting subdivisions (a) and (b) of section 361.2, the Legislature envisioned a two-step process: under subdivision (a), the court examines whether it would be detrimental to temporarily place a child with the nonoffending noncustodial parent; under subdivision (b), the court decides whether that placement should become permanent and whether the court's jurisdiction should be terminated. (*In re Austin P., supra,* 118 Cal.App.4th at p. 1131.) Where the noncustodial parent does not seek custody, there is no need to address any risk that might arise from placement with him or her. (*In re Terry H.* (1994) 27 Cal.App.4th 1847, 1854 [34 Cal.Rptr.2d 271].)

■ A nonoffending parent has a constitutionally protected interest in assuming physical custody, as well as a statutory right to do so, in the absence of clear and convincing evidence that the parent's choices will be detrimental to the safety, protection, or physical or emotional well-being of the child. (*In re Isayah C.* (2004) 118 Cal.App.4th 684, 697 [13 Cal.Rptr.3d 198], citing § 361.2.)

### b. *Forfeiture*

■ It is the noncustodial parent's request for custody that triggers application of section 361.2, subdivision (a); where the noncustodial parent makes no such request, the statute is not applicable. (*In re V.F.* (2007) 157 Cal.App.4th 962, 971 [69 Cal.Rptr.3d 159]; *R.S. v. Superior Court* (2007) 154 Cal.App.4th 1262, 1271[ 65 Cal.Rptr.3d 444].) Failure to object to noncompliance with section 361.2 in the lower court results in forfeiture. (*In re*

*Sabrina H.* (2007) 149 Cal.App.4th 1403, 1419 [57 Cal.Rptr.3d 863].) ▉ Here, mother did not challenge the jurisdictional allegations against her, and, most importantly, she did not request custody of A.A. at the time of the disposition, so the court did not commit any technical violation of section 361.2. By failing to request custody, mother forfeited the right to be considered for placement as a noncustodial parent.

Further, even if the error could be considered a substantive constitutional violation, as opposed to procedural error (see *In re Wilford J.* (2005) 131 Cal.App.4th 742, 754 [32 Cal.Rptr.3d 317] [challenges based on procedural defects or erroneous rulings subject to forfeiture rule]), mother's failure to object or challenge the failure to consider placement pursuant to section 361.2, despite two opportunities to raise the issue in this court (on appeal from the disposition hearing on the reactivated petition, and by way of writ following the setting of the § 366.26 hearing), forfeited any constitutional challenge. (*Yakus v. United States* (1944) 321 U.S. 414, 444 [88 L.Ed. 834, 64 S.Ct. 660] [a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it]; *In re Sheena K.* (2007) 40 Cal.4th 875, 880–881 [55 Cal.Rptr.3d 716, 153 P.3d 282] [constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion].)

Cloaking the issue in terms of constitutional error does not preserve the issue.

### c. *Mother Was Neither Nonoffending nor Noncustodial, Within the Meaning of Sections 361, Subdivision (c), and 361.2*

Even if the issue is not deemed forfeited, we would not find error because (a) mother was the subject of a jurisdictional finding under section 300, subdivision (b) in the current dependency proceeding, which meant she was not a nonoffending parent within the meaning of section 361, subdivision (c); and (b) the court's previous removal order upon a finding of detriment in the prior dependency precluded the court from considering placement with her.

▉ An incarcerated parent has the same right as other parents to be given the opportunity to request custody under section 361.2. (*In re V.F., supra*, 157 Cal.App.4th at pp. 965–966.) Among the factors in determining detriment are the noncustodial incarcerated parent's ability to make appropriate arrangements for the care of the child and the length of that parent's incarceration. (*Id.* at p. 966.) If an incarcerated parent can make suitable arrangements for a child's care during his or her incarceration, the juvenile court has no basis to take jurisdiction in the case, under section 300, subdivision (g). (*In re*

*Isayah C., supra*, 118 Cal.App.4th at p. 696.) However, mother was not the type of noncustodial parent to which section 361.2 was intended to apply where the current jurisdictional finding was made under section 300, subdivision (b), as well as section 300, subdivision (g), and she had previously lost custody due to removal in the earlier dependency upon a finding of detriment.

Mother relies heavily on the opinion in *In re V.F., supra*, 157 Cal.App.4th 962. In that case, the father was a noncustodial parent who was incarcerated at the time the child came into the dependency system as a result of the mother's neglect and drug use. The only allegation of the petition naming the father was one made under section 300, subdivision (g), relating to his incarceration and inability to arrange adequate care for the children. (*In re V.F.*, at p. 966.) At the disposition hearing, custody was removed from both parents pursuant to section 361, subdivision (c), and the father was denied services due to his incarceration. (*In re V.F.*, at p. 967.)

On appeal, the father argued that because the dependency petition was based only on the conduct of the children's mother, he should have been treated as the nonoffending parent and allowed to retain custody of the children under section 361, subdivision (c)(1). (*In re V.F., supra*, 157 Cal.App.4th at pp. 966–967.) The reviewing court agreed, holding that because the father was not the custodial parent, the court should have considered the case under section 361.2. (*In re V.F.*, at p. 971.)

█ The present case is distinguishable from *In re V.F.*, where here the allegations against mother were not limited to an allegation that mother was incarcerated and unable to arrange the care of the minor. Instead, the court made true findings as to two allegations against mother under section 300, subdivision (b). While an incarcerated parent can avoid jurisdiction under section 300, subdivision (g) by arranging for his or her child's care (*In re Isayah C., supra*, 118 Cal.App.4th at p. 696; *In re Aaron S.* (1991) 228 Cal.App.3d 202, 212 [278 Cal.Rptr. 861]), the same is not true of a parent whose acts or omissions have led to jurisdictional findings under section 300, subdivision (b). The holding of *In re V.F.* does not extend to incarcerated parents who have been the subject of a true finding on any jurisdictional ground other than section 300, subdivision (g).

█ This case is distinguishable from *In re V.F.* for another reason: the juvenile court had previously removed A.A. from mother's custody in the original dependency proceeding upon a finding of substantial risk of harm (§ 361, subd. (c)), and had not subsequently restored custody to her. Under section 361.2, subdivision (a), a finding of detriment precludes placement of a dependent minor with a noncustodial parent. In our view, mother's status as a noncustodial parent due to the prior finding of detriment and an involuntary

removal order in the original dependency, as well as the court's section 300, subdivision (b) findings against her in the current dependency, made her ineligible for consideration for placement with her under section 361.2. We explain.

Section 361.2 comes into play *after* a child has been removed from the physical custody of his or her parents under section 361, subdivision (c). Subparagraph (1) of section 361, subdivision (c), requires the court to consider allowing a nonoffending parent to "retain physical custody" so long as that parent or guardian presents a plan acceptable to the court demonstrating that he or she will be able to protect the child from future harm. We interpret the phrase "retain physical custody" to mean that the parent seeking temporary placement of the child under section 361.2 must not have suffered a previous loss of custody of the child by a juvenile court order of removal after a finding of detriment.

Reading section 361.2 in light of section 361, subdivision (c), the parent must be *both* a nonoffending *and* noncustodial parent in order to be entitled for consideration under section 361.2, that is, the parent must retain the right to physical custody, and must not have been the subject of a previous detriment finding and removal. In this respect, we disagree with the reviewing court's comments in footnote 4 of *In re V.F.*, *supra*, 157 Cal.App.4th at page 969. In that footnote, the court commented on the fact that reviewing courts have used the phrase "nonoffending noncustodial parent" as shorthand for " 'a parent . . . with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300.' " The court goes on to explain that "[a]lthough the phrase 'nonoffending parent' appears in section 361, subdivision (c)(1), it does not appear in the text of section 361.2. We believe the better shorthand phrase is simply 'noncustodial parent.' [Citation.]" (*Ibid.*)

Later, the court concluded it was unnecessary to determine whether the noncustodial father was a "nonoffending parent" because the phrase "nonoffending parent" does not appear in section 361.2. (*In re V.F., supra*, 157 Cal.App.4th at p. 970.) The court concluded that section 361.2 applies to a noncustodial parent without regard to that parent's status as an offending or nonoffending parent. (157 Cal.App.4th at p. 970.) We do not agree. In our view, a juvenile court should not be required to consider placing a child with an incarcerated parent who has previously been the subject of a removal order due to acts or omissions by that parent that brought his or her child within the description of section 300, and whose custody right has not been restored. In other words, if the noncustodial status of the incarcerated parent is due to a prior dependency order removing custody, and there has been no

intervening restoration of the parent's right to physical custody of the child, the court need not inquire if that parent desires to have the child placed with him or her.

Our interpretation finds support in the legal maxim "The law neither does nor requires idle acts." (Civ. Code, § 3532.) Once the juvenile court makes findings of substantial risk by clear and convincing evidence under section 361, subdivision (c), against a custodial mother (or father) in a dependency proceeding, that parent's right to control over the dependent child is "limit[ed]." (§ 361, subd. (a).) Here, the fact that the minor may have been eventually placed with father—the noncustodial parent in the earlier proceeding—did not restore to mother full rights to care, custody or control of the child in any subsequent proceeding. The dismissal of the earlier dependency did not vacate the prior findings of detriment against mother or the removal order.

Thus, an incarcerated parent who has previously lost custody rights by virtue of a removal order upon findings of detriment pursuant to section 361, subdivision (c), does not stand in the same shoes as an incarcerated noncustodial parent whose fundamental and statutory right to custody has not been limited by a previous order of removal. In this respect, we subscribe to the view that the Legislature intentionally used the term "nonoffending" in section 361, subdivision (c), to define the class of noncustodial parents who must be considered for placement pursuant to section 361.2, when the court orders removal of the child from the custodial parent pursuant to section 361, subdivision (c).

Our view is also bolstered by the fact that the Legislature describes a "noncustodial" parent in section 361.2, subdivision (a), as the parent "with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300." A parent who has had his or her right to physical custody of a child limited by a prior removal order is not simply a parent with whom the child was not residing at the time the dependency was initiated. When a child is removed from a parent's custody, the care, custody and control of the child are under the supervision of a social worker, who may place the child as appropriate. (§ 361, subd. (e).) When that occurs, the parent no longer retains the right to arrange for the child's care, pursuant to section 300, subdivision (g).

A parent may be noncustodial with or without a formal family law custody order. However, even where the parent is rendered noncustodial due to a family court award of custody, the order is not grounded on a finding of detriment or risk of serious physical harm; such a custody order requires only a determination of the child's best interest. (Fam. Code, §§ 3011, 3040.) Even

where a child's primary residence is with the other parent, the noncustodial parent enjoys a presumptive right to joint legal and physical custody. (Fam. Code, §§ 3010, 3040, subd. (a).)

Thus a parent "with whom the child was not residing at the time" of the initiation of the dependency, whether or not due to a family law custody order, is presumptively entitled to custody because he or she has not been previously found to pose a risk of harm to the child. It is reasonable to assume the Legislature intended to require a juvenile court to first consider placement of a child with this class of parent, to avert the trauma of a foster placement. A parent who is noncustodial because of a prior finding of detriment is not merely a parent "with whom the child was not residing at the time" of the events that resulted in the dependency.

■ Furthermore, the prior finding of detriment in the original dependency precluded consideration of mother as a noncustodial parent pursuant to section 361.2. It is illogical to require a court to consider placing a child with a noncustodial parent who has already been determined to pose a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor. To the extent that section 361.2 requires a court to consider detriment before placing a child with a noncustodial parent, but does not state *when* that finding of detriment must be made, a prior removal order based on findings pursuant to section 361, subdivision (c) satisfies the legislative requirement of section 361.2, subdivision (b).

None of the published cases we have found address the juvenile court's failure to consider placement of a child with an incarcerated noncustodial parent who has previously lost custody of the child due to his or her own conduct as an offending parent in a prior dependency. Under such circumstances, however, we conclude that a court's failure to make an inquiry pursuant to section 361.2 does not necessarily implicate considerations of "fundamental fairness" which would require reversal at this stage of the proceedings. (See *In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1151 [65 Cal.Rptr.2d 913].) Moreover, the prior finding of detriment satisfies the provisions of section 361.2, subdivision (b).

d. *DPSS Did Assess Relatives*

Mother's argument that the juvenile court failed to consider the applicability of section 361.2 points to the fact she had made several requests that A.A. be placed with relatives. Mother acknowledges that DPSS assessed relatives for placement and that "some of the assessments were negative." She complains that her requests for relative placement signaled her desire for custody, and asserts error in the department's failure to "have Mother identify

alternative prospective relative-caretakers after her son had been taken from his father." The record does not support mother's position.

DPSS assessed several relatives and a nonrelative family member at the time A.A. was removed from mother's custody. When A.A. was detained from father's custody, mother requested that DPSS consider placement with an aunt previously indicated as a possible placement, but indicated there were no other relatives. On this record, DPSS did what mother claims should have been done. After mother informed the social worker there were no other relatives to consider, it would have been a futile exercise to direct the social worker to *again* seek relative names from mother.

### e. *Conclusion*

Because a true finding under section 300, subdivision (b), as well as section 300, subdivision (g), was made against mother in the reactivated (second) dependency, she was not a nonoffending parent. Because her right to custody of A.A. had been limited by a prior order of removal in the first dependency, she could not be considered a noncustodial parent within the meaning of section 361.2. Because DPSS had considered relatives for placement, there was no other relief available to the incarcerated mother pursuant to section 361.2.

### 2. *Mother Presented No Material Change of Circumstances to Justify a Modification of the Dispositional Order Where She Was Still Incarcerated at the Time of the Petition.*

Mother argues that in light of the "indisputable fact" that the juvenile court's denial of reunification services to mother without applying the provisions of section 361.2 was erroneous, the court erred in denying mother's petition for modification of the prior order denying her services. However, mother's section 388 petition was not based on this ground. The section 388 petition asserted only that mother's circumstances were changed because she had completed various programs while incarcerated and shared a strong bond with the minor. Further, we have already determined that the juvenile court did not err in failing to inquire if mother desired custody of A.A. Therefore, we limit our review of the court order denying that petition to the grounds presented.

A juvenile court order may be changed, modified or set aside under section 388 if the petitioner establishes by a preponderance of the evidence that (1) new evidence or changed circumstances exist and (2) the proposed change would promote the best interests of the child. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 316–317 [27 Cal.Rptr.2d 595, 867 P.2d 706].) The

parent bears the burden to show both a legitimate change of circumstances and that undoing the prior order would be in the best interest of the child. (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 529 [65 Cal.Rptr.2d 495] (*Kimberly F.*).) Generally, the petitioner must show by a preponderance of the evidence that the child's welfare requires the modification sought. (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1228 [72 Cal.Rptr.3d 153].)

Not every change in circumstance can justify modification of a prior order. (*In re S.R.* (2009) 173 Cal.App.4th 864, 870 [92 Cal.Rptr.3d 838].) The change in circumstances must relate to the purpose of the order and be such that the modification of the prior order is appropriate. (*Ibid.*, citing *In re Daijah T.* (2000) 83 Cal.App.4th 666, 674 [99 Cal.Rptr.2d 904].) In other words, the problem that initially brought the child within the dependency system must be removed or ameliorated. (See *In re B.D., supra*, 159 Cal.App.4th at p. 1230, citing *Kimberly F., supra*, 56 Cal.App.4th at pp. 531–532.) The change in circumstances or new evidence must be of such significant nature that it requires a setting aside or modification of the challenged order. (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 615 [130 Cal.Rptr.3d 46], citing *Ansley v. Superior Court* (1986) 185 Cal.App.3d 477, 485 [229 Cal.Rptr. 771].)

In evaluating whether the petitioner has met his or her burden to show changed circumstances, the trial court should consider (1) the seriousness of the problem which led to the dependency, and the reason for any continuation of that problem; (2) the strength of relative bonds between the dependent children to both parent and caretakers; and (3) the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been. (*Kimberly F., supra*, 56 Cal.App.4th at p. 532.) The petition is addressed to the sound discretion of the juvenile court, and its decision will not be overturned on appeal in the absence of a clear abuse of discretion. (*In re Stephanie M., supra*, 7 Cal.4th at p. 318; *In re S.J.* (2008) 167 Cal.App.4th 953, 959 [84 Cal.Rptr.3d 557].)

The petition in the instant case noted mother's completion of various services and programs. However, the basis for the juvenile court's intervention and the primary cause that led to her children's removal was her arrest on a warrant for drug charges, for which she was still serving a sentence. Under the first and third of the *Kimberly F.* criteria (seriousness of the problem and reason for continuation of the problem; degree to which the problem may be easily removed or ameliorated and degree to which it has been ameliorated), mother failed to show changed circumstances.

At the hearing on the section 388 petition, the juvenile court determined that mother's circumstance had changed to some degree, but there was no

showing she had addressed the circumstance (her federal prison sentence), which was the basis for the denial of reunification services. "Mother's circumstance that gave rise to no services still exists today and hasn't changed a bit. She's still being held. It was under subdivision (e), length of incarceration." Under the *Kimberly F.* criteria, mother failed to demonstrate materially changed circumstances which would justify a modification of the no services order.

The juvenile court did not abuse its discretion in denying the section 388 request for modification of the dispositional order.

## DISPOSITION

The judgment is affirmed.

King, J., and Codrington, J., concurred.