Filed 2/25/14 In re P.W. CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL **REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re P.W., a Person Coming Under the Juvenile Court Law. | B252499 (Los Angeles County Super. Ct. No. CK91100) |
| Z.W., Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Real Party in Interest. | |

ORIGINAL PROCEEDINGS in extraordinary writ. Timothy R. Saito, Judge. Petition denied.

Z.W., in pro. per., for Petitioner.

No appearance for Respondent.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Kimberly A. Roura, Deputy County Counsel, for Real Party in Interest.

## INTRODUCTION

Petitioner Z.W., in propria persona, filed a petition for extraordinary writ pursuant to California Rules of Court, rule 8.452, challenging the juvenile court's order denying her petition under Welfare and Institutions Code section 388[1] seeking placement of her grandson, P.W., in her care. We find that the juvenile court did not abuse its discretion in denying her petition and therefore deny the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

In December 2011, the Los Angeles County Department of Children and Family Services (DCFS) filed a section 300 petition on behalf of P.W. (then five years old), based on allegations of substance abuse by Mother S.P., as well as physical altercations between Mother and a male companion. P.W. and his half-sister Ariel (then three-and-a-half years old) were removed from the home of a maternal aunt, where they had lived since September 2010, and placed in foster care together.

P.W.'s father, A.W., is petitioner's son. He was incarcerated at the time of the petition and informed the court that he was scheduled to be released in 2018.

The juvenile court found a prima facie case was established for detaining P.W. and Ariel pursuant to section 300, subdivisions (a) and (b) and ordered them detained from Mother and their respective fathers.

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

In January 2012, P.W. and Ariel were placed in the home of Ariel's paternal grandmother, Joyce.[2] P.W. told the dependency investigator that he liked living with Joyce, whom he and Ariel referred to as "Granny."

In March 2012, the juvenile court ordered DCFS to prepare a Pre-Release Investigation Report as to petitioner and a paternal aunt. Petitioner said that she had taken care of P.W. until he was one year old and wanted to continue to care for him. P.W. said that he wanted to stay with Ariel.

The dependency investigator learned that petitioner had a criminal history that included charges of driving under the influence in 1980, disorderly conduct under the influence of a drug in 1980 and 1982, and willful child cruelty with possible injury or death in 1981. She was a suspect in a child abuse case in November 1981. DCFS explained in the report that petitioner could not obtain a criminal exemption until she obtained a disposition for her charges and recommended that the investigation be found negative. The investigation as to the paternal aunt, Georgia B., was found positive, but the investigator recommended that P.W. remain placed with Ariel and Joyce. DCFS recommended monitored visits for petitioner with Georgia as the monitor, and the court so ordered.

In April 2012, petitioner sent a letter to the juvenile court seeking placement of P.W. with her. She stated that she had called the state Bureau of Criminal Identification and Information and learned that her charge of willful child cruelty in 1981 had been changed to disorderly conduct under the influence of drugs. She attached her criminal record, which indicated that she was sentenced to 24 months probation and three days in jail on the disorderly conduct charge.

---

[2]     Ariel and P.W. have different fathers.

3

Petitioner gave the dependency investigator a copy of a 1985 dependency court case regarding one of her children. The report stated that her child was detained from her in 1982 because she was using drugs to such a degree that she was unable to care for the child.

In a May 2012 interim review report, DCFS again recommended that P.W. remain with Ariel and Joyce. P.W. told the investigator that he loved petitioner but wanted to remain with Joyce. Joyce indicated that she loved him and would continue to care for him. Father remained incarcerated and asked that P.W. be placed with his family.

Joyce told the caseworker that, prior to a planned monitored visit in June 2012, petitioner called her and told her to bring P.W. to her house for only a few minutes because he was usually bored at her home and seemed happier with Joyce. Joyce felt that petitioner did not want to be inconvenienced by P.W.

At the October 3, 2012 adjudication hearing, the juvenile court sustained the petition under section 300, subdivision (b), and removed the children from Mother and their respective fathers. P.W.'s father was denied reunification services pursuant to section 361.5, subdivision (e).

At an April 2013 hearing, Father's counsel asked DCFS to reassess petitioner for unmonitored visits. In May 2013, DCFS approved unmonitored visits for petitioner.

In July 2013, petitioner filed a section 388 petition, asking that P.W. be placed with her.[3] As to changed circumstances, petitioner stated that she had completed her orientation for foster care. She had not completed her foster care class, and she was waiting for the justice department to expunge her criminal

---

[3]    Petitioner also had filed a section 388 petition in March 2012, seeking custody of Pharaoh. The court denied the petition.

4

record. She asserted that it would be better for P.W. to be with her because he would be happier and would be able to see his sister and brothers. She thought that P.W. saw Ariel with her grandmother and wanted to be with his own grandmother. Petitioner attached a letter, stating P.W. asked if he can stay with her. On August 2, 2013, the court filed an order denying petitioner's petition, stating that the request did not state new evidence or a change of circumstances.

In September 2013, DCFS filed last minute information for the court. DCFS stated that, during some recent visits P.W. did not want to stay at petitioner's home and cried because he had to go to the visits. In addition, the caseworker stated that there was no space for P.W. in petitioner's home and that the caseworker had seen "young men drinking, smoking and cursing" in front of petitioner's home on several occasions. The caseworker noted that Joyce had provided for all of P.W.'s needs since January 2012, including helping him with psychological problems, hospitalizations, and academic issues. Joyce "is stable and goes out of her way to show the children she loves them and is invested in their safety and well being." Finally, P.W. repeatedly had told the caseworker, his attorney, and his daycare provider that he wanted to live with Joyce and Ariel.

At an October 18, 2013 hearing, the juvenile court reviewed reunification services. Mother acknowledged that P.W. and Ariel were "okay" and "not in a bad situation" being placed with Joyce. She stated that she would prefer P.W. to live with petitioner, but he did not want to be separated from Ariel. The court found continued jurisdiction to be necessary and terminated reunification services. The court set a section 366.26 hearing for February 14, 2014.

The court then turned to petitioner's section 388 petition. Petitioner presented as an exhibit a court Order for Dismissal dated September 18, 2013, regarding her 1982 conviction for disorderly conduct under the influence of a drug.

5

The order stated, "The court grants the petition. The court finds from the records on file in this case, and from the foregoing petition, that the defendant is eligible for the relief requested."

Petitioner testified that she had been trying to show the court that she was worthy of accepting responsibility for P.W. during her son's incarceration. She stated that she completed parenting classes and had her criminal record expunged. The court denied the petition, reasoning that P.W. was a child with special needs and was doing well in his current placement. Petitioner filed a notice of appeal, which we construed as a timely notice of intention to file a petition for extraordinary relief because the juvenile court had set a hearing under section 366.26. (See *In re Tabitha W.* (2006) 143 Cal.App.4th 811, 815-817.)

## DISCUSSION

"Section 388 permits '[a]ny parent or other person having an interest in a child who is a dependent child of the juvenile court' to petition 'for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court' on grounds of 'change of circumstance or new evidence.' (§ 388, subd. (a).)" (*In re Lesly G.* (2008) 162 Cal.App.4th 904, 912.) The petitioner must "establish[] by a preponderance of the evidence that (1) new or changed circumstances exist, and (2) the proposed change would promote the best interest of the child. [Citation.] The parent bears the burden to show both a '"legitimate change of circumstances"' and that undoing the prior order would be in the best interest of the child. [Citation.]" (*In re S.J.* (2008) 167 Cal.App.4th 953, 959 (*S.J.*).)

"The change in circumstances or new evidence must be of such significant nature that it requires a setting aside or modification of the challenged order.

[Citation.]" (*In re A.A.* (2012) 203 Cal.App.4th 597, 612 (*A.A.*).) "We review the grant or denial of a petition for modification under section 388 for an abuse of discretion. [Citations.]" (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1228.)

Petitioner has not met her burden of showing both a legitimate change of circumstances and that undoing the order placing P.W. with Joyce would be in P.W.'s best interest. (*S.J.*, *supra*, 167 Cal.App.4th at p. 959.) The record clearly indicates that P.W. is doing well in his placement with Joyce, and petitioner did not present any evidence that moving P.W. would promote his best interest. P.W. has consistently stated his preference to be placed with Ariel and Joyce. Similarly, Joyce has consistently indicated her willingness to do anything to care for the two children.

The record indicates a strong bond between Ariel and P.W. Mother acknowledged that P.W. did not want to be separated from his sister. Petitioner has presented no evidence that separating P.W. from his sister would promote his best interest.

Mother's counsel argued at the hearing that P.W. wanted to be placed with petitioner. However, counsel for P.W. and DCFS both stated that P.W.'s preference was to live with Joyce, and the record indicates that, although P.W. says he loves petitioner, he has not always had positive visits with her.

As to a change in circumstances, petitioner completed parenting classes and had her criminal record expunged, but this is not a change of "such significant nature" as to require uprooting P.W. from a home in which he is doing well and moving him away from the sister and guardian with whom he has developed strong bonds. (*A.A.*, *supra*, 203 Cal.App.4th at p. 612.)

We conclude that the juvenile court did not abuse its discretion in denying petitioner's section 388 petition.[4]

## DISPOSITION

The petition is denied.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, J.


We concur:


EPSTEIN, P. J.                    EDMON, J.*

---

[4]     Petitioner also states that the court placed her on monitored visits when it denied her section 388 petition. According to the reporter's transcript, the court merely stated that visitation is allowed. However, the minute order states that petitioner is allowed monitored visitation. "Conflicts between the reporter's and clerk's transcripts are generally presumed to be clerical in nature and are resolved in favor of the reporter's transcript unless the particular circumstances dictate otherwise. [Citations.]" (*In re Merrick V.* (2004) 122 Cal.App.4th 235, 249.) Petitioner previously was given unmonitored visits, which indicates that the juvenile court intended to grant unmonitored visits. The juvenile court therefore should correct the minute order. (§ 385.) In addition, as DCFS states, the issue of petitioner's future visitation should be considered at the section 366.26 hearing.

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.