Filed 11/29/22 In re D.T. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re D.T., a Person Coming Under the Juvenile Court Law. | C095459 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>M.T. et al.,<br><br>Defendants and Appellants. | (Super. Ct. No. JD240945) |

C.G. (mother) and M.T. (father) appeal from the juvenile court's orders terminating their parental rights and freeing D.T. (minor) for adoption. (Welf. & Inst. Code, §§ 366.26, 385.)[1]  Mother contends the juvenile court erred in denying her section 388 petition seeking return of minor to her care or, in the alternative, reunification

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

services. In addition, mother and father both cite *In re Caden C.* (2021) 11 Cal.5th 614 (*Caden C.*) in arguing that the juvenile court should have applied the beneficial parental relationship exception to adoption. (§ 366.26, subd. (c)(1)(B)(i).)

We will affirm the juvenile court's order denying mother's section 388 petition. But with regard to mother and father's second contention, because the record is unclear as to whether the juvenile court made findings consistent with the guidance in *Caden C.*, we will vacate the orders terminating mother's and father's parental rights and remand the matter to the juvenile court with direction to make findings and enter a new order.

BACKGROUND

A

In November 2020, Sacramento County Department of Child, Family and Adult Services (the Department) filed a section 300 petition on behalf of the then four-month-old minor based on a history of domestic violence and the violation of a domestic violence restraining order. (§ 300, subd. (b)(1).) Father also had an untreated substance abuse problem and reunification services for the parents had been terminated in a separate dependency case involving minor's two siblings, who are not parties to this appeal. (§ 300, subds. (b)(1) & (j).) Minor was detained and placed in foster care and the juvenile court ordered visitation.

The December 2020 jurisdiction/disposition report noted that minor was placed in a foster home with her siblings and she was doing well. Mother admitted that she and father had a history of domestic violence, but she knew how to protect minor. Father denied current physical violence and said minor was not in danger. He said he was sober.

The Department explained that father had lost his parental rights to minor's half-sibling in 2008. It added that father had threatened the social worker and it recommended suspending father's in-person visits with minor. The juvenile court issued such an order later that month.

2

In a January 2021 report, the Department said father had a history of being verbally aggressive toward staff during visits with his children. Father had also threatened his drug treatment service provider.

The Department reported in March 2021 that mother had missed only two visits since October 2020 and that she was doing very well with minor. Father visited virtually with minor.

In May 2021, at a contested jurisdiction/disposition hearing, the juvenile court sustained the petition and adjudged minor a dependent child of the court. The juvenile court bypassed parents for reunification services, finding that (1) reunification services had been terminated for two of minor's siblings, and mother and father had not made reasonable efforts to address the problems that led to removal of the siblings; and (2) father's reunification services and parental rights had been terminated in connection with minor's half-sibling after father failed to reunify or make reasonable efforts to address the problems that led to the half-sibling's removal. (§ 361.5, subds. (b)(10) & (b)(11)) The juvenile court set a section 366.26 hearing.

In July 2021, father filed a section 388 petition asking the juvenile court to vacate the section 366.26 hearing and to order reunification services. Father alleged he completed anger management classes, participated in drug testing and treatment, and had been sober for six months.

In its August 2021 section 366.26 report, the Department recommended terminating parental rights and freeing the minor for adoption. Mother's supervised visits with minor were generally appropriate and she only missed visits occasionally. Father's virtual visits sometimes required redirection. There were times when he would arrive late or leave early, and he joined some virtual visits while driving or working out at a gym. The social worker described the mother and father visits as "no more than that of a friendly visitor."

Minor was a "calm and happy child" and was comfortable with her foster parents. Her foster parents loved her and wanted to adopt minor and her two siblings. The social worker acknowledged that father's progress with his substance abuse was commendable but opined that father was still in the process of changing his behavior. To the best of the social worker's knowledge, mother and father remained in a relationship, and father had not participated in domestic violence classes. The social worker added that father continued to be dismissive and impatient with her.

In October 2021, mother filed a section 388 petition asking the juvenile court to vacate the section 366.26 hearing and return minor to her or, in the alternative, order reunification services for her. Mother argued she was capable of providing a safe and stable home, noting there had been no new incidents of domestic violence since minor's detention. She said she completed a domestic violence course.

In an October 2021 addendum report, the Department wrote that father was no longer drug testing. Father had completed a domestic violence program in September 2021 and said he learned coping skills, including breathing exercises. According to the Department, however, father declined to explain how he had benefited from the anger management classes or the substance abuse treatment. The social worker was concerned that father did not discuss healthy ways to cope with stress. The restraining order had been reduced to a peaceful contact order; father and mother were attending couples counseling and not living together. Father said he was ready to be a parent, but he would rely on mother to care for minor. Although father was permitted to reach out to the foster parents to inquire about minor, he did not do so. Father sometimes appeared distracted during visits; nevertheless, minor seemed to respond to him.

Mother's visits with minor were going well. The two played games and watched educational videos together, and mother would change minor's diaper and feed her. Minor appeared happy during visits. Mother said minor called her "moma." Still, the

4

Department continued to recommend terminating parental rights because, in its opinion, the benefits of permanency outweighed any possible detriment.

In a November 2021 addendum report, the Department indicated that father had been arrested in May 2021 for crimes related to an armed robbery in February 2021 involving a gun.

The juvenile court heard the section 388 petitions at the section 366.26 hearing. Mother testified that in her domestic violence course she learned about warning signs, safety measures, stress relievers, and the healing process. She had completed four classes. Mother also said she learned communication skills in marriage counseling. Mother and father usually saw each other two to three times a week and they were working on their differences. She said there had been no domestic violence since November 2020; although father broke into the house and took her keys, she did not consider that to be domestic violence. She saw positive changes in father.

Mother said minor was accustomed to their routine during visits and the visits always ended positively. According to mother, her bond with minor was unbreakable and minor understood they were mother and daughter. Mother understood that minor was removed due to domestic violence, but she felt it was for the wrong reasons. Mother was willing to limit her contact with father and seek a restraining order and asked the juvenile court to return minor to her. She felt she had the tools to keep herself and minor safe.

Father testified he was employed and living in a sober living facility. Although he was not drug testing, he had been sober for nearly 10 months, and he regularly attended meetings and relapse prevention classes. Previously, his longest period of sobriety had been three years.

Father said he learned in anger management to slow down and not blame others. He felt it made him a better father. He was willing to participate in any court-ordered services should the juvenile court grant his section 388 petition. He regularly attended

his visits with minor and she smiled at him. Father acknowledged he never lived with minor. He planned to continue living in the sober living facility and minor could live separately with mother. Father obtained his driver's license.

B

The juvenile court denied the section 388 petitions and indicated it was turning to the section 366.26 determination. It described the analysis as whether the child was likely to be adopted, whether an exception applied, and whether the termination of parental rights would be detrimental to minor. The juvenile court discussed the following:

Minor was under the age of three and the case had been pending for more than a year, longer than the statutory six months. Mother and father had a significant amount of time to address concerns but did not take it seriously until a few months before the hearing. Although progress had been made, the concerns were not resolved. Father presented inconsistent evidence that he was changing. Mother and father also gave inconsistent testimony regarding their contact. In addition, mother was not credible in testifying that she was not aware of father's criminal case for armed robbery.

The juvenile court expressed concern that mother stopped participating in parenting classes. It acknowledged the visitation but said those were not enough to make the findings it needed to make. The juvenile court said mother did not understand domestic violence or how to address it.

Addressing the beneficial parental relationship exception to adoption, the juvenile court found that the benefit of maintaining a relationship between minor and her parents did not outweigh the benefit of adoption. Minor had been removed only a few months after her birth and the parents had not developed a strong enough bond to outweigh the benefits of adoption. According to the juvenile court, the evidence did not demonstrate that terminating parental rights would be detrimental to minor. The juvenile court acknowledged that mother and father were changing and encouraged them to continue to

6

address their issues.  The juvenile court terminated parental rights and freed the minor for adoption.

## DISCUSSION

### I

Mother contends the juvenile court erred in denying her section 388 petition seeking the return of minor to her care or, in the alternative, reunification services.

"Section 388 allows a parent to petition to change, modify, or set aside any previous juvenile court order.  (§ 388, subd. (a).)  'The petitioner has the burden of showing by a preponderance of the evidence (1) that there is new evidence or a change of circumstances and (2) that the proposed modification would be in the best interests of the child.'  [Citation.]  '[T]he change in circumstances must be substantial.'  [Citations.]  [¶] The section 388 modification procedure is an ' "escape mechanism" when parents complete a reformation in the short, final period after the termination of reunification services but before the actual termination of parental rights.'  [Citations.]  We review a juvenile court's denial of a section 388 petition for abuse of discretion, and review its factual findings for substantial evidence.  [Citation.]  We may disturb the exercise of the court's discretion only when the court has made an unreasonable or arbitrary determination.  [Citation.]"  (*In re J.M.* (2020) 50 Cal.App.5th 833, 845-846, italics omitted.)

"A parent establishes a substantial change of circumstances for purposes of section 388 by showing that, during the period between termination of reunification services and the permanency planning hearing, he or she has resolved the previously unresolved issues supporting juvenile court jurisdiction.  (See *In re A.A.* (2012) 203 Cal.App.4th 597, 611-612 ['The change in circumstances' must be such that 'the problem that initially brought the child within the dependency system must be removed or ameliorated.  [Citation.]  The change in circumstances or new evidence must be of

7

such significant nature that it requires a setting aside or modification of the challenged order.'].)" (*In re J.M., supra*, 50 Cal.App.5th at p. 846.)

Here, the minor was removed from mother's care in November 2020 because mother was unable to protect minor from father, who was engaging in domestic violence and abusing drugs. Although mother completed a domestic violence class in May 2021, and had completed three other domestic violence courses between 2019 and 2021, there was evidence she still did not fully understand domestic violence, and she said she thought the minor's removal was for the wrong reasons. In addition, there was evidence that mother and father had time to address concerns but did not fully engage until shortly before the hearing, and that although progress had been made, the concerns were not resolved. The juvenile court found that mother and father gave inconsistent testimony regarding their contact, and it found mother not credible in testifying that she was not aware of father's criminal case for armed robbery. Because the evidence indicated mother's circumstances were changing but not yet changed, the juvenile court acted within its discretion in finding that mother had failed to show a change in circumstances and in denying her section 388 petition.

II

Mother and father argue the juvenile court should have applied the beneficial parental relationship exception to adoption. They claim the juvenile court did not conduct the analysis required by *Caden C.*, and that the juvenile court considered improper factors in making its determination.

At the section 366.26 selection and implementation hearing, a juvenile court must choose one of the several " 'possible alternative permanent plans for a minor child . . . . The permanent plan preferred by the Legislature is adoption. [Citation.]' [Citation.] If the court finds the child is adoptable, it must terminate parental rights absent circumstances under which it would be detrimental to the child." (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1368, italics omitted.) There are only limited circumstances

8

which permit the court to find a "compelling reason for determining that termination [of parental rights] would be detrimental to the child." (§ 366.26, subd. (c)(1)(B).) Such circumstances include when the parents have maintained regular visitation and contact with the child, the child would benefit from continuing the relationship, and termination of parental rights would be detrimental to the child. (§ 366.26, subd. (c)(1)(B)(i) [beneficial parental relationship exception]; *Caden C., supra*, 11 Cal.5th at pp. 639-640.)

The party claiming the exception has the burden of establishing the existence of any circumstances that constitute an exception to the termination of parental rights. (*Caden C., supra*, 11 Cal.5th at pp. 636-637; *In re Melvin A*. (2000) 82 Cal.App.4th 1243, 1252; Cal. Rules of Court, rule 5.725(d)(2).) For the beneficial parental relationship exception to apply, the parent "must show regular visitation and contact with the child, taking into account the extent of visitation permitted. Moreover, the parent must show that the child has a substantial, positive, emotional attachment to the parent—the kind of attachment implying that the child would benefit from continuing the relationship. And the parent must show that terminating that attachment would be detrimental to the child even when balanced against the countervailing benefit of a new, adoptive home." (*Caden C*., at p. 636.)

The beneficial parental relationship exception to adoption is an exception to the general rule that the juvenile court must choose adoption where possible, and it " 'must be considered in view of the legislative preference for adoption when reunification efforts have failed.' " (*In re Celine R*. (2003) 31 Cal.4th 45, 53.) It "must be examined on a case-by-case basis, taking into account the many variables which affect a parent/child bond. The age of the child, the portion of the child's life spent in the parent's custody, the 'positive' or 'negative' effect of interaction between parent and child, and the child's particular needs are some of the variables which logically affect a parent/child bond." (*In re Autumn H*. (1994) 27 Cal.App.4th 567, 576.) The factual predicate of the exception must be supported by substantial evidence, but the juvenile court exercises its discretion

9

in weighing that evidence and determining detriment. (*Caden C., supra*, 11 Cal.5th at pp. 639-640; *In re K.P.* (2012) 203 Cal.App.4th 614, 622.) We do not substitute our judgment for that of the juvenile court as to what is in the child's best interests. (*Caden C.*, at p. 641.)

Here, in finding that the exception did not apply, the juvenile court appropriately considered minor's age, the amount of time she spent in the care of the foster parents, the quality of minor's visits with parents, and her relationship with mother and father. However, the juvenile court also discussed mother and father's progress in services and their struggles with the circumstances that gave rise to the dependency. The juvenile court noted that father was on drugs while he participated in an anger management program and that mother had stopped participating in parenting classes. In addition, the juvenile court noted that mother and father were working on their relationship and that they gave inconsistent testimony regarding their contact. The juvenile court acknowledged their efforts and encouraged them to continue.

As *Caden C.* explains, a parent's continued struggle with the issues leading to dependency is not a categorical bar to applying the beneficial parental relationship exception. (*Caden C., supra*, 11 Cal.5th at p. 637.) That would "effectively write the exception out of the statute." (*Ibid.*) A section 366.26 hearing "all but presupposes that the parent has not been successful in maintaining the reunification plan meant to address the problems leading to dependency." (*Caden C.*, at p. 637.) "Parents need not show that they are 'actively involved in maintaining their sobriety or complying substantially with their case plan' [citation] to establish the exception." (*Ibid.*)

Still, the issues that led to the dependency may be relevant to the application of the exception, such as where there is a negative effect on the child. (*Caden C., supra*, 11 Cal.5th at p. 637.) But they are relevant only to the extent they inform whether the child would benefit from continuing the parental relationship and be harmed by losing it. (*Id.* at p. 638.) Here, while it is possible the juvenile court was intermixing its rationale

10

for denying mother and father's section 388 petitions, there are also indications in the record otherwise. If the comments pertained to the section 366.26 portion of the hearing, we cannot say with certainty that the juvenile court's discussion of mother and father's progress was limited to whether termination of parental rights would be detrimental. (*Caden C.,* at p. 639)  Accordingly, we will remand the matter to the juvenile court with direction to make findings and enter a new order consistent with *Caden C.*

## DISPOSITION

The juvenile court's order denying mother's section 388 petition is affirmed. The juvenile court's orders terminating mother's and father's parental rights are vacated, and the matter is remanded to the juvenile court with direction to make findings and enter a new order consistent with *Caden C., supra*, 11 Cal.5th 614.  On remand, the juvenile court shall exercise its discretion regarding what additional evidence, if any, may be presented by the parties.

 

 

 

 

/S/
MAURO, Acting P. J.

 

 

We concur:

 

 

/S/
HOCH, J.

 

 

/S/
BOULWARE EURIE, J.

 

11