Filed 3/6/26  In re L.C. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re L.C., a Person Coming Under the Juvenile Court Law. | H053191, H053360 (Santa Clara County Super. Ct. No. 24JD027746) |
| SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES, Plaintiff and Respondent, v. K.M., Defendant and Appellant. | |

The juvenile court terminated mother K.M.'s parental rights over two-year-old L.C. after denying mother's petition to reinstate reunification services (Welf. & Inst. Code, § 388).  (Welf. & Inst. Code, § 366.26.)  Mother argues her recent substantial progress demonstrates it would be in L.C.'s best interest to reinstate reunification services such that the order terminating parental rights must also be reversed.  Because the juvenile court did not abuse its discretion in finding mother had not shown that further services would be in L.C.'s best interest, we will affirm both orders.

## I.   BACKGROUND

The Santa Clara County Department of Family and Children's Services alleged in 2024 that then-infant L.C. was at risk of serious physical harm in his parents' care due to domestic violence exposure and mother's erratic and violent behavior.  (Welf. & Inst.

1

Code, § 300, subd. (b)(1); undesignated statutory references are to this Code.) According to the petition, mother suffered from bipolar disorder and acted violently toward father in L.C.'s presence. L.C. lived with his father, and father continued to see mother despite having a no-contact restraining order against her. The Department's interviews with the parents revealed that both mother and father had a history of perpetrating intimate partner violence (IPV). L.C. was detained and placed in the protective custody of the Department in connection with an incident in January 2024 which resulted in mother's arrest for violating a protective order and father's arrest on outstanding warrants.

The juvenile court sustained the petition, declared L.C. a dependent of the court, removed him from his parents' custody, and placed him with his paternal grandmother. Both parents were granted reunification services and visitation. The parents were instructed to participate in parent orientation and parenting without violence classes, a substance use assessment, random weekly drug testing, and individual counseling. Mother was instructed to take medications as prescribed and participate in a batterer's intervention program. Father was instructed to participate in an IPV support group.

At the contested six-month review hearing in October 2024, the court terminated reunification services due to each parent's minimal progress on their case plan. (The juvenile court had continued that hearing to give the parents the opportunity to continue to engage in services.) Mother began the violence intervention program and completed the parenting orientation and class after initial non-engagement. She ultimately did not complete weekly drug testing or individual counseling, attended only a few IPV intervention program sessions, and continued to miss visits before the six-month review hearing. She also resumed her relationship with father. The day before services were terminated, mother began attending counseling.

Before the contested selection and implementation hearing, both parents petitioned under section 388 for an additional six months of reunification services. In her February 2025 petition, Mother stated that she had not been taking her bipolar medication before

2

the six-month review hearing because she was pregnant with L.C.'s brother, N.C., who was placed into protective custody with his paternal grandmother in December 2024 due to the ongoing domestic violence between the parents. (N.C. was returned to his mother's care in March 2025 under a family maintenance plan.) Mother was required to participate in individual therapy and psychiatric services as part of N.C.'s reunification case plan, and to participate in mental health diversion program in criminal court.

Mother explained that she ended her relationship with father when N.C. was removed from her care. She began psychiatric services and medication, moved into an IPV shelter, started in an IPV support group, and paid to restart the violence intervention program in January 2025. She completed a substance use assessment and began random drug testing in February 2025. Mother also obtained a permanent restraining order against father in March 2025. Before the contested selection and implementation hearing, mother completed the IPV support group and continued to develop a support system.

Visitation with L.C. was reinstated at mother's request after N.C.'s removal in December 2024. Although mother attended visits regularly and L.C. enjoyed the visits, visitation was terminated before the selection and implementation hearing due to missed visits and mother's decision to focus on stabilizing her mental health.

## A. SECTION 388 AND SECTION 366.26 HEARINGS

The juvenile court determined mother made a prima facie showing on her section 388 modification petition. At an evidentiary hearing on the petition in April 2025, mother testified that she was last arrested for physical violence against father in March 2023 and that she was also a victim of IPV. She explained that restarting medication for bipolar disorder helped her establish a parenting routine. Mother stopped visiting L.C. from July to December 2024 because she was dealing with postpartum depression and guilt but realized L.C. needed consistency to strengthen their bond. Mother testified that L.C. called her "mom" and was emotionally attached to her and his little brother N.C.

3

The social worker testified at the hearing about a violent incident between the parents in November and December 2024. Also according to the social worker, mother had a pattern of participating in services only intermittently and had "not consistently been able to show that she has fully addressed the issues" that led to L.C.'s removal, despite making some changes and pursuing a restraining order.

The juvenile court denied mother's section 388 petition for additional reunification services after concluding the April 2025 hearing. The court acknowledged mother's circumstances were changing, but it determined that mother did not adequately show that circumstances had substantially changed. It found mother did not begin to address the two issues that brought L.C. into the dependency system—mother's history of mental health issues and domestic violence—until three to four months after services ended and just before the section 366.26 hearing was set. She did not begin psychiatric services and bipolar medication until January 2025. It also found she did not take responsibility for her own role in the history of violence between the parents, and there was not enough time to see whether mother would truly separate from father given that her request for restraining order against him had only recently been filed. In explaining its ruling, the court emphasized that the dependency scheme stresses quick reunification of young children and that "delays never work well, or in the best interest of the child."

At the contested section 366.26 hearing, the juvenile court found L.C. was likely to be adopted and the beneficial parent relationship and sibling relationship exceptions did not apply. The juvenile court followed the Department's recommendation to terminate both parents' parental rights and implement a permanent plan of adoption.

## II.  DISCUSSION

Section 388 allows a parent to petition the juvenile court to modify a previous order based on changed circumstances or new evidence. (*In re N.F.* (2021) 68 Cal.App.5th 112, 120 (*N.F.*).) In addition to showing a material change in circumstances, the petitioning parent must demonstrate that the proposed modification is

4

in the child's best interest. (*Ibid.*) Indeed, the change in circumstances must materially and directly relate to the basis for dependency jurisdiction. (*In re A.A.* (2012) 203 Cal.App.4th 597, 612.) As a petition under section 388 is addressed to the sound discretion of the juvenile court, we will not disturb its decision absent a clear abuse of discretion. (*N.F.*, at p. 120.)

A few months after the court terminated reunification services in October 2024, mother began regularly taking psychiatric medication, participating in an IPV intervention program, and complying with random drug testing. She also reported that she had stopped seeing father and obtained a restraining order against him. The record demonstrates that during that time mother took substantial steps to address the violence and mental health issues that led to the original jurisdictional finding. But once reunification services terminate, the paramount consideration is whether the requested relief will advance the child's need for permanency and stability. (*N.F.*, *supra*, 68 Cal.App.5th at p. 121; *In re J.C.* (2014) 226 Cal.App.4th 503, 526–527 (*J.C.*).) Despite mother's laudable efforts, we see no abuse of discretion in the juvenile court determining that additional reunification services were not warranted under the circumstances and would not further L.C.'s interest in permanency and stability. (*N.F.*, at pp. 120–121; *J.C.*, at pp. 526–527.)

The record supports the juvenile court's observation that mother did not seriously address her IPV and mental health issues until a few months before the section 366.26 hearing, which was almost a year after L.C. was removed from her care. Due to L.C.'s quite young age, additional reunification services could be provided for no more than four months after the evidentiary hearing on the modification petition, and only if there was a substantial probability of L.C.'s return to mother's custody. (§ 361.5, subds. (a)(1)(B) & (a)(3)(A).) Based on mother's history of making progress for a few months but then falling into old habits, the juvenile court reasonably questioned whether mother's very recent efforts represented a lasting change in circumstances. Moreover,

L.C. had spent a substantial portion of his young life in the care of his paternal grandmother, who was able to provide L.C. with a loving and stable home and wished to adopt him.

Mother notes in her briefing the three best interest factors discussed in *In re Kimberly F.* (1997) 56 Cal.App.4th 519 (*Kimberly F.*), namely: the seriousness of the problem that led to the dependency; the strength of the bond between the parent and child on the one hand and between the foster parent and child on the other; and the degree to which the problem underlying the dependency has been remedied. In addition to those factors, we agree that the proper focus at this late stage of dependency jurisdiction is L.C.'s need for stability. (*J.C.*, *supra*, 226 Cal.App.4th at p. 527.) Mother also acknowledges, with commendable candor, that she made little or no progress on her case plan until well after reunification services had ended and a selection and implementation hearing had been set under section 366.26.

Having considered mother's arguments and the record under our deferential standard of review, we are satisfied that the juvenile court gave due consideration to the *Kimberly F.* factors in reaching its decision about what would be in L.C.'s best interest. The court expressed particular concern that mother had only recently begun to make changes addressing the serious IPV and mental health issues that brought L.C. into the dependency system, such that a finding premised on resolution of those issues would be premature. The court also stressed the importance of avoiding further delay in permanency, which we interpret as an acknowledgment that L.C. was securely bonded to his paternal grandmother despite his good relationship with mother.

We recognize, as did the juvenile court, that the new information proffered by mother in her section 388 petition shows progress on important elements of her case plan. But as we have explained, the juvenile court did not abuse its discretion by denying mother's modification petition on this record. (*N.F.*, *supra*, 68 Cal.App.5th at p. 120.) Since mother's challenge to the juvenile court's selection of a permanent plan under

6

section 366.26 derives from her arguments on the section 388 petition to reinstate services, her challenge to the order terminating parental rights and selecting adoption as the permanent plan is also unsuccessful.  (*In re Caden C.* (2021) 11 Cal.5th 614, 630.)

## III.    DISPOSITION

The order denying mother's section 388 modification petition for further reunification services and the order terminating mother's parental rights as to L.C. are affirmed.

_____
Grover, Acting P. J.

**WE CONCUR:**

_____
Lie, J.

_____
Wilson, J.

H053191, H053360
*In re L.C.; Santa Clara County DFCS v. K.M.*