Filed 7/9/14  In re J.R. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re J.R., a Person Coming Under the Juvenile Court Law. | B251443 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. CK82796) |
| Plaintiff and Respondent, | |
| v. | |
| C.R., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County. Amy M. Pellman, Judge.  Affirmed.

Julie E. Braden, under appointment by the Court of Appeal, for Appellant.

Amir Pichvai for Respondent.

_____

Father C.R. appeals from the trial court's summary denial of his Welfare and Institutions Code section 388 petition.[1] We affirm because the court did not abuse its discretion by not holding a hearing on the petition.

## FACTS AND PROCEEDINGS

In June 2010, respondent Department of Family and Children Services (DCFS) filed a petition under section 300 against appellant father C.R. and mother – who is not a party to this appeal – regarding their minor children, J.R. born in 2003, and then three-month old M.R. born in 2010. The petition alleged father and mother had failed to protect and provide regular care to the children which placed the children at risk of harm. In particular, father had accidentally scratched J.R.'s face in administering inappropriate discipline; father had a history of alcohol abuse, which periodically rendered him unable to provide regular care and supervision; father had a history of convictions for possession of controlled substances which created a detrimental home environment; mother had untreated "mental health issues" which limited her ability to provide for the children's regular care and supervision; and, father and mother had a history of domestic violence. Based on the petition's allegations, the court detained the children and placed them in foster care.

In October 2010, father submitted on the petition and the court sustained the petition's allegations. The court ordered family reunification services and directed father to participate in parenting, alcohol, drug, and domestic violence counseling, and to submit to random drug and alcohol testing. The court further ordered monitored visitation for father of at least three times a week, and granted DCFS discretion to increase the number and length of visits. In succeeding months, DCFS received favorable reports from father's counselors on his program compliance and progress. In January 2011, the court increased father's visitation.

---

[1]    All future undesignated statutory references are to the Welfare and Institutions Code.

In November 2011, DCFS recommended that the court return the children to father's home with Family Maintenance Services and that the court terminate mother's reunification services. Accordingly, the court ordered the children's return to father upon his arranging proper childcare for them while he was at work, and further ordered that DCFS could make unannounced visits to father's home. The court terminated mother's reunification services. In August 2012, based on father's continued progress, DCFS recommended termination of jurisdiction and the children's permanent placement with father, who would receive sole legal and physical custody.

On December 7, 2012, father was arrested by the California Highway Patrol for driving under the influence. Two days later on December 9, Azusa city police officers also arrested father for driving under the influence. When the Azusa police stopped father, they found then two-and-a-half year old M.R. lying in the back seat wrapped in a blanket unrestrained by a car seat. Father thereafter tested positive for opiates, codeine, morphine, and alcohol.

DCFS filed a supplemental petition under section 387. The petition alleged father had been under the influence of alcohol and prescription medication when Azusa police arrested him, which had hindered his ability to take care of M.R. The children were detained and placed in foster care. The court ordered monitored visitation for father and ordered that he submit to random drug and alcohol tests.

In February 2013, the court sustained the supplemental petition after father pleaded no contest to its allegations. DCFS recommended no reunification services for father because he had already received more than 18 months of reunification services, and his arrest by Azusa police two months earlier in December involved one of the same problems – substance abuse – that had brought father and children to the attention of DCFS. The court ordered visitation for father and set a selection and implementation hearing under section 366.26 for the children's permanent plan.

The section 366.26 hearing began in June 2013. The children were by then living in the home of prospective adoptive parents, who had already begun adoption proceedings for the children's half-sibling. Ten-year-old J.R. wished, however, to

3

maintain a relationship with father and opposed being adopted. To permit DCFS to reconsider its permanent plan for J.R., the court continued the hearing to August 15, 2013, and reduced father's visitation to once a month.

On August 15, 2013, father filed in conjunction with the 366.26 implementation hearing a petition under section 388 requesting modification of the court's placement order. Father was not in the courtroom during the hearing because, according to his counsel, he had suffered an undefined medical event sending him to the emergency room.

Father's 388 petition alleged changed circumstances meant that modification of the placement order served the children's best interests. He cited as changed circumstances his enrollment in a substance abuse program in November 2012 several weeks before his DUI arrests, and his compliance with the program's rules and periods of sobriety; his enrollment in a parenting class; his attendance at AA/NA meetings three to four times a week; and, his pairing with a sobriety sponsor.

In support of his petition, father attached two letters. The first was dated two months earlier on June 12, 2013, from Azusa Medical and Mental Health. It confirmed father's enrollment in its substance abuse program since November 2012. The letter stated father "complies with all program rules and continues to be motivated in his sobriety. [Father] has shown progress in learning relapse prevention skills and life-skills. [Father] continues to test illicit drug free and is motivated to make changes to continue his abstinence." The second letter was from the National Council on Alcoholism and Drug Dependence. It confirmed he had enrolled the previous day in that organization's parenting program.

Based on the foregoing allegations of changed circumstances, father's petition requested that the court modify its placement order to either place the children in his home, or, alternatively, establish a schedule of monitored or unmonitored visitation with discretion to liberalize. Father's petition asserted the proposed modifications were in the children's bests interests because he had been taking steps to remedy the problems that had brought him and his children to the attention of DCFS, and that his visitation with the

4

children, which included almost daily phone calls with J.R., was "consistent" and of high quality.

The court summarily denied father's 388 petition without a hearing because the petition did not state new evidence or a change in circumstances that made it in the children's best interests to modify the placement order. Because father was not at the hearing, the court continued the 366.26 implementation hearing to November. This appeal followed.

**DISCUSSION**

Section 388 permits a parent to petition the juvenile court to change a previous order when the change would be in a child's best interests.[2] For a petition to succeed, the parent must present new evidence or circumstances that justify modifying a court's prior order. (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1228; *In re Zachary G.* (1999) 77 Cal.App.4th 799, 806-807 (*Zachary*).) In deciding whether to hold a full hearing on a section 388 petition, the juvenile court may choose to summarily deny the petition without a hearing if the court finds that the "petition . . . fails to state a change of circumstances or new evidence that may require a change of order or termination of jurisdiction or, that the requested modification would promote the best interest of the child." (Cal. Rules of Court, rule 5.570(d).) On the other hand, if the petition states a prima facie case for relief, the court shall conduct a hearing. (§ 388, subd. (d).) Courts must construe a section 388 petition liberally in favor of granting a hearing. (Cal. Rules of Court, rule 5.570.) "If the petition presents *any* evidence that a hearing would promote the best interests of the child, the court must order the hearing." (*In re Angel B.* (2002) 97 Cal.App.4th 454, 461, italics in original.) We review a juvenile court's ruling denying

---

[2] Section 388, subdivision (a) provides: "Any . . . person having an interest in a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court . . . for a hearing to change, modify, or set aside any order of court previously made . . . ."

a section 388 petition under the deferential abuse of discretion standard. (*In re A.A.* (2012) 203 Cal.App.4th 597, 612; *In re Anthony W.* (2001) 87 Cal.App.4th 246, 250.)

Father contends the trial court abused its discretion by denying him a hearing because he had presented a prima facie case of changed circumstances or new evidence that demonstrated modification of the placement order would serve the children's best interests. (*Zachary*, *supra*, 77 Cal.App.4th at p. 808; *In re Jamson O.* (1994) 8 Cal.4th 398, 415.) In support, father compares his circumstances to those of *In re Aaliyah R.* (2006) 136 Cal.App.4th 437. According to father, *Aaliyah R.* shows he met the minimal burden needed to establish his right to a hearing. In *Aaliyah R.*, the mother, who was only 15 years old and had been adjudicated a dependent child herself, exhibited long periods of unstable behavior injurious to her child, including neglect and refusal to care for her. (*Id.* at p. 447.) Father's reliance on *Aaliyah R.* is to no avail. Granted, he has been more diligent and attentive a parent than in *Aaliyah R.,* but the holding in *Aaliyah R.* was that the trial court did not err in denying a hearing on mother's 388 petition. The fact that father is arguably a better parent than the teenaged mother in *Aaliyah R.* does not mean, however, that the trial court erred in finding that his 388 petition did not meet a prima facie threshold of sufficiently changed circumstances or new evidence warranting modification of the court's placement order. Father's enrollment in the substance abuse program at Azusa Medical and Mental Health in November 2012 predated his December 2012 arrests and the court's February 2013 placement order, and therefore was not "new" evidence. And his enrollment in the parenting class at the National Council on Alcoholism and Drug Dependence the day before he filed his 388 petition was so recent that the court was justified in giving it little weight.

Father's reliance on *In re Casey D.* (1999) 70 Cal.App.4th 38, is also unavailing. There the mother filed a 388 petition just before the permanency planning hearing in which she alleged changed circumstances. The trial court denied a hearing on the petition, which the appellate court found was not abuse of discretion. The decision noted that although the mother was loving toward her 16-month-old child and behaved appropriately toward her, mother had been drug-free for only a few months and showed a

6

pattern of cooperating in drug treatment only when required to do so by outside agencies, leading the social worker to conclude there was risk of detriment in returning child to mother's custody. Father appears to cite *Casey D.* for the proposition that a court errs in denying a hearing on a 388 petition if the hearing will not delay implementation of a permanent plan. (*Id.* at p. 47.) Father cites the following sentence from *Casey D.* in support. "A petition which alleges merely changing circumstances and would mean delaying the selection of a permanent home for a child to see if a parent, who has repeatedly failed to reunify with the child, might be able to reunify at some future point, does not promote stability for the child or the child's best interests." Father may be reading too much into that language. *Casey D.* did not hold that no delay means an automatic right to a hearing. Instead, it reasoned that delaying implementation of a permanent plan is usually not in a child's best interests. We agree, but the fact that the court *could* have held a hearing on appellant's petition without delaying the permanent plan hearing, which the court was continuing for reasons unrelated to the section 388 petition, does not mean the court erred in not holding such a hearing.

## DISPOSITION

The trial court's order summarily denying father's 388 petition is affirmed.


                                        RUBIN, ACTING P. J.
WE CONCUR:



        FLIER, J.



        GRIMES, J.


7