Filed 2/2/16  In re E.W. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re E.W., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B263634 (Super. Ct. No. 14JV-00458) (San Luis Obispo County) |
| SAN LUIS OBISPO COUNTY DEPARTMENT OF SOCIAL SERVICES,  Plaintiff and Respondent, v. RYAN W.,  Defendant and Appellant. | |

Ryan W. (Father) appeals the juvenile court's jurisdictional and dispositional orders which removed his son, E.W., from his custody after the San Luis Obispo County Department of Social Services (DSS) filed a juvenile dependency petition.  (Welf. & Inst. Code, § 300, subd. (b)(1).)[1]  We conclude, among other things, that substantial evidence supports the findings that 1) Father did not adequately supervise and protect his son which placed the child at risk of harm, and 2) removal of the child from Father's custody was necessary.  We affirm.

---

[1] All statutory references are to the Welfare and Institutions Code.

FACTS

DSS filed a juvenile dependency petition alleging N.G. (Mother) and Father failed to protect their 14-year-old son, E.W., causing a substantial risk that E.W. will suffer serious physical harm. In 2013, E.W. was arrested at Mother's residence "for a probation violation after testing positive for marijuana." Mother was arrested for felony possession of a "narcotic controlled substance" and drug paraphernalia. E.W. was "released to father's custody in Oklahoma."

In December 2013, E.W. "was placed into protective custody in Oklahoma" for smoking "marijuana alone in his father's residence." DSS alleged Father "was unable to be located in a timely manner"; and during a search of his residence, police found "additional marijuana, drug paraphernalia, and a stolen gun." Father was arrested on "an outstanding warrant."

The Oklahoma Department of Human Services (ODHS) took "emergency custody." In a December 16, 2013, report, it said E.W. was "a Ward of the State of California before being sent to live with his father . . . in . . . Oklahoma. . . . San Luis Obispo County and Washington County [Oklahoma] Courts continue to collaborate to determine the best course of action for [E.W.]."

E.W. remained in an "out of home placement in Oklahoma" until April 2014, when the juvenile case was closed and E.W. was "returned to his father's care." Father sent E.W. to California to live with his maternal grandparents.

In November 2014, E.W. was arrested for "vandalizing items in his mother's home." E.W. told a DSS social worker that "he has not spoken with his father since October of 2014, and believes his father is having to reside in a hotel and is working to manage his criminal charges." DSS was not able to contact father "until the first part of December 2014." DSS claimed Father's "charge of criminal activity and possible substance abuse has impacted his ability to maintain custody of his son . . . ."

During a contested jurisdictional/dispositional hearing, Father testified, "I would like to see the court give me jurisdiction over my son . . . ." Father was asked, "Would you be able to have [E.W.] placed in your home today?" Father answered, "No."

2

The juvenile court found it had jurisdiction and sustained the petition. It ordered the "care, custody, control, and conduct of the child [to be] under the supervision" of DSS, that the child be placed with his grandparents, and that family reunification services be provided to Mother and Father. The court told Father, "[I]f you follow the case plan . . . you have a very good chance of being reunified with your son through a formal court order." The court said, "I do not believe that--based on the evidence presented here today, that it would be appropriate for this court to just let you . . . decide what's going to be best for your son in the immediate future. We need to protect him."

## DISCUSSION

### Substantial Evidence

Father contends there is insufficient evidence to support the juvenile court's jurisdictional findings that he did not adequately supervise and protect his son and that the child was subject to a risk of harm within the meaning of section 300, subdivision (b)(1). We disagree.

Section 300 subdivision (b)(1) provides, in relevant part, that the juvenile court may take jurisdiction of a minor child where the "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . ."

"'On appeal from an order making jurisdictional findings, we must uphold the court's findings unless . . . we determine there is no substantial evidence to support the findings.'" (*In re Christopher C.* (2010) 182 Cal.App.4th 73, 84.) We must draw all reasonable inferences and resolve all evidentiary conflicts in support of the judgment. (*Ibid.*) We do not weigh the evidence. The credibility of witnesses is a matter exclusively decided by the trial court.

DSS contends the juvenile court's jurisdictional findings are supported because the record reflects "a pattern of neglect by the father, as demonstrated by his inaction and inability to intervene and care for [E.W.]." We agree.

3

In December 2013, E.W. "was placed into protective custody in Oklahoma after he was found smoking marijuana alone in his father's residence." At that home, police "found additional marijuana, drug paraphernalia, and a stolen gun." Father was arrested. DSS said Father's ability to maintain custody of his son was negatively impacted by Father's pending criminal case and Father's "possible substance abuse." Father sent the child to California "to live with his maternal grandparents," but father did not supervise the child.

In May 2014, E.W. was living with Mother. In November, E.W. was arrested for vandalizing Mother's home. E.W. told DSS that in the month leading up to his arrest he had been been staying at "various friends' houses," Mother was "actively using heroin and methamphetamine," and he found drugs in "mother's closet." When DSS filed the dependency petition, E.W. was 14 years old. E.W. began using marijuana when he was nine years old. E.W. had been arrested for selling marijuana in California and possessing it in Oklahoma.

ODHS said that E.W. told them he had been "living on the streets for about a month before being placed 'in Juvie.'" It said E.W. had been expelled from school for "selling marijuana on school property" and had not received adequate discipline. E.W. said that rarely was he able to communicate with Father. ODHS said Father "has not been a significant part of [E.W.'s] life." Father "has a history of alcohol use . . . , [has] two charges of Driving Under the Influence of Alcohol," and has been charged with "receiving stolen goods." It said E.W. had been living with Father in Oklahoma, but Father left E.W. "home alone." ODHS said that "[t]his allowed [E.W.] to continue to use marijuana."

ODHS determined that Father's neglect was a threat to the child's safety. It said E.W. told the social worker that "the reason he was selling marijuana was because 'I had to eat.'" It said Father and Mother "have failed to get [E.W.] into drug counseling, even though he has shown a history of drug and alcohol use." E.W. told a DSS social worker that he did not want to see Father again because he rarely saw him in the past and he had not acted as a Father. He said that after moving to California, Father made no

4

efforts to contact him. The juvenile court could reasonably infer: 1) Father had willfully and continually neglected his parental responsibility for his son at a critical time when the child's life was in crisis, and 2) Father's home environment for his son was detrimental to the child. Child welfare social services agencies *in two states* reached the same conclusion.

Moreover, Father admitted to DSS that "he is *not currently in a position* to provide [E.W.] with a place to live while he is dealing with the *pending criminal charges*." (Italics added.) He told a DSS social worker that "his former employment" at an oil company "was not conducive to providing [E.W.] *with the supervision he requires*." (Italics added.)

Father cites to his testimony at the contested hearing. He disagreed with certain statements by the social workers and some facts in the petition. As to statements E.W. made to social workers, Father said, "[T]his is just all on paper. This is what somebody wrote down. There is a lot of stuff that's incorrect on here, I know that much." But we do not resolve conflicts in the evidence or witness credibility. (*In re Christopher C.*, *supra*, 182 Cal.App.4th at p. 84.) The juvenile court resolved those conflicts against Father. The evidence is sufficient to support the jurisdictional findings.

*Father's Protection Plan*

Father contends the juvenile court erred by not adopting his "protection plan" that E.W. be placed with the maternal grandparents "while allowing [Father] to retain custody" pending "resolution of [Father's] legal troubles."

DSS responds that the juvenile court could reasonably infer such a plan was not appropriate "based on [Father's] own admissions that he could not resume custody of [E.W.]" We agree.

At a February 11, 2015, hearing, the San Luis Obispo County juvenile court asked Father's counsel whether the child should be placed with Father. Counsel responded, "Not immediately. He has criminal matters he has to deal with back in Oklahoma and housing issues he needs to deal with."

5

In a May 18, 2015, jurisdiction report, DSS said it interviewed E.W. who told the social worker that "he has never had much of a relationship with his father." E.W. said, "Prior to moving to Oklahoma in November of 2013, he hadn't seen his dad in a few years.  After returning to California from Oklahoma in April of 2014, his dad never made any efforts to contact him."  E.W. said that "currently he does not want a relationship with his father."  He said, "I just don't want to know him."  E.W. said that "he feels his father is, 'acting like a father when he isn't one.'"

Moreover, "a parent whose acts or omissions have led to jurisdictional findings" is not in a position to arrange for the child's care.  (*In re A.A.* (2012) 203 Cal.App.4th 597, 607.)  The juvenile court found it was not in the best interests of E.W. for Father to be exercising custody rights at this time.  Father has not shown error.

The orders are affirmed.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


YEGAN, J.


PERREN, J.

6

Teresa Estrada-Mullaney, Judge
Linda D. Hurst, Judge
Richard Curtis, Judge[*]
Superior Court County of San Luis Obispo

_____

Matthew J. Hardy, under appointment by the Court of Appeal, for Defendant and Appellant.

Rita L. Neal, County Counsel, Leslie H. Kraut, Deputy County Counsel, for Plaintiff and Respondent.

---

[*] (Retired Judge of the Monterey Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)