Filed 12/29/20  In re N.D. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re N.D., a Person Coming Under the Juvenile Court Law. | H047842 (Monterey County Super. Ct. No. 18JD000096) |
| MONTEREY COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>E.D. et al.,<br><br>Defendants and Appellants. | |

In this dependency action, the mother and father of N.D. filed post-permanency petitions to have N.D. returned to their care or for reunification services to be reinstated. The juvenile court denied the petitions, and entered an order under Welfare and Institutions Code section 366.26 terminating parental rights and selecting adoption as the permanent plan for N.D.  On appeal, the mother of N.D. argues that the juvenile court's denial of her petition was an abuse of discretion, and both parents argue the order terminating their parental rights should therefore be reversed.  Finding no abuse of discretion, we will affirm.

## I. BACKGROUND

Mother gave birth to N.D. in June 2018.  N.D. was premature, he tested positive for methamphetamine, and was placed in the neonatal intensive care unit.  A mandated

reporter contacted the Monterey County Department of Social Services, concerned that mother's drug use would impact her ability to care for N.D. After unsuccessful attempts to develop a safety plan, N.D. was discharged into protective custody when he was 19 days old, and detained in a foster home.

The Department filed a petition under Welfare and Institutions Code section 300, subdivision (b) alleging N.D. has suffered, or there was a substantial risk that he will suffer, serious physical harm or illness as a result of his parents' failure to protect him. The petition alleged both parents were homeless; mother had a long history of methamphetamine abuse and had used methamphetamine when pregnant with N.D.; mother had refused prenatal care while pregnant with N.D.; mother went into premature labor as the result of an automobile accident caused by father, resulting in N.D. being born at 32 weeks gestation; mother and N.D. tested positive for methamphetamine at N.D.'s birth; N.D. exhibited methamphetamine withdrawal symptoms; mother had a child welfare history of neglecting her four older children who were no longer in her care; father had been physically aggressive toward mother in the past; and mother's sister had obtained a stay away order protecting her from father due to his aggressive behavior. According to the jurisdiction/disposition report, the father of mother's three oldest children was deceased and those children were in the care of their paternal grandmother under a legal guardianship. Mother's fourth child was living with his father.

The petition was sustained at the jurisdiction/disposition hearing in August 2018. N.D. was declared a dependent of the juvenile court and ordered removed from his parents' custody. Reunification services and visitation were ordered for mother and father.

Reunification services were continued at the court's six-month review in March 2019. Mother had graduated from an inpatient treatment program in January. She had maintained regular communication with the Department, was residing in a sober living environment, and her visits with N.D. were consistent. Father was released from custody

2

into a residential treatment program in October 2018. (Father had been sentenced to Monterey County jail in July 2018 for obstructing/resisting an executive officer in 2017.) He was living in transitional housing, regularly visiting N.D., and was compliant with his case plan.

The 12-month permanency hearing was held in September 2019. The matter was submitted on the social worker's report, which noted that as of September 3 mother was seven months pregnant, living with her parents, and was again using methamphetamine. Mother was discharged from a sober living program in March because of drug use. She tested positive for methamphetamine in March and May, and she refused or did not show for drug tests in April, May, June, and July. Mother had difficulty participating in individual therapy, she cancelled or shortened her visits with N.D., and missed visits with N.D.'s occupational therapist. Mother's participation in outpatient treatment was inconsistent, and she declined an opportunity to return to residential treatment in July. According to the social worker's report, father had been discharged from transitional housing in June. He was homeless for a period of time, and requested that his visits with N.D. be cancelled. In July, father told the social worker that he had "used meth for 3 weeks straight," and he was afraid to sleep because "he believed someone was after him." He threatened that he was " 'going to hurt someone,' " and told his therapist he would use a gun if he had one. He returned to residential treatment in mid-August, and resumed his visits with N.D. The Department recommended that family reunification services be terminated because mother and father were unable to maintain sobriety outside a structured residential treatment program, and they had continued to use methamphetamine throughout the review period, including while mother was pregnant with her sixth child.

As of the September 2019 permanency hearing, mother had entered a residential program for pregnant women, where she planned to remain after the birth of her child. Father had returned to the inpatient program he attended after his release from jail in

3

2018. The court commended mother and father for attending the hearing, and for thinking about N.D.'s best interests and making "a very painful decision." Counsel for N.D. joined in the court's comments, observing that "it took a lot of courage for [the parents] to come in here and submit," and that the parents had made the right decision. Family reunification services were terminated and the case was set for a selection and implementation hearing under Welfare and Institutions Code section 366.26.

In January 2020, mother and father filed petitions under Welfare and Institutions Code section 388 for N.D. to be returned to their care. Mother argued that she had graduated from a treatment program and was in aftercare. She had a sponsor and a support group, and was residing in a sober living environment. She had voluntarily participated in a child advocacy program, and had been caring for her newborn since his birth. (The child was born sometime after September 30 and before November 13.) Father argued he had graduated from his treatment program and obtained full-time employment. He was sober, regularly attending AA/NA meetings, and coparenting his newborn child with mother. He was in the process of obtaining housing, and he had an extensive support system. Both parents argued that N.D. had a strong bond with each of them, and they asked that N.D. be returned to their individual or collective care with or without maintenance services, or alternatively for the resumption of reunification services.

A combined hearing was held on the parents' petitions and selection and implementation. Father submitted on his petition, after arguing that between May and August 2019 he had struggled with sobriety and questioned at that time whether he wanted to be involved in family life. Those weeks were "[his] enemy" because he did not use that time wisely. Counsel stated that father did not want to lose N.D., but father had "no misgivings about legally where this Court can go or actually what he's done" and "he's well aware of … where this case is right now." Mother submitted on her petition after explaining that "things were going well and then kind of hit a place where things

4

kind of stalled." Counsel for N.D. and the Department argued the parents had not established changed circumstances, and adoption was in N.D.'s best interests. The Department also argued services could not be reinstated because more than 18 months had passed since N.D.'s detention. The juvenile court denied the petitions after commending the parents' continuing efforts toward sobriety and stability, but finding those efforts did not amount to a change of circumstances.

The question of selection and implementation was submitted on the Department's report which was admitted in evidence. The Department recommended terminating parental rights and selecting adoption as the permanent plan for N.D. N.D. remained in his original foster placement, and his foster parents wanted to adopt him. His paternal grandmother also expressed an interest in placement. The court found that adoption was appropriate and in N.D.'s best interests. The court terminated mother's and father's parental rights with respect to N.D. and ordered that N.D. remain a dependent of the juvenile court with adoption as his permanent plan.

Mother and father appeal from the selection and implementation order, challenging only the denial of mother's Welfare and Institutions Code section 388 petition. (All statutory references are to this code.)

## II. DISCUSSION

Section 388 allows a parent to "petition the court on the basis of a change of circumstances or new evidence for a hearing to change, modify or set aside a previous order in the dependency." (*In re Casey D*. (1999) 70 Cal.App.4th 38, 47.) The petitioning parent must demonstrate changed circumstances and that the proposed modification is in the child's best interests. (*Ibid*.) After reunification services have been terminated, a parent's interest in the care, custody and companionship of the child is no longer paramount. (*In re Stephanie M*. (1994) 7 Cal.4th 295, 317.) Rather, a petition filed after reunification services have been terminated is examined for whether the requested relief will advance the child's need for permanency and stability. (*In re J.C.*

5

(2014) 226 Cal.App.4th 503, 527.)  A change in circumstances "must be of such significant nature that it requires a setting aside or modification of the challenged order." (*In re A.A.* (2012) 203 Cal.App.4th 597, 612.)  As a petition under section 388 is addressed to the sound discretion of the juvenile court (*In re Stephanie M.*, at p. 318), we will not disturb the ruling absent a clear abuse of discretion.  (*Ibid*.)  We look to whether the juvenile court " 'has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination.' "  (*Ibid*.)

Mother argues her petition "provided sufficient information in terms of changed circumstances/new information and the best interests" of N.D., and the juvenile court erred by foregoing the opportunity "to take a step away from the inertia of this case to give this family a chance to remain intact."  Father argues that he is aggrieved by the denial of mother's section 388 petition because N.D.'s placement affects the juvenile court's authority to terminate his parental rights.  (He does not argue that the denial of either petition was an abuse of discretion.)

At the time the court terminated reunification services in September 2019, mother had entered a residential treatment program in San Jose for pregnant women and new mothers.  As of mid-December, mother was in residential treatment in Monterey County, and as of the filing of her section 388 petition in January 2020, mother was "doing after care" and living in a sober environment.  Despite these laudable efforts, mother's history of methamphetamine abuse and her continued use of methamphetamine earlier in 2019 after graduating from an inpatient program and even during a new pregnancy support the juvenile court's denial of mother's petition.  Mother's completion of residential treatment and transition to a sober living environment after reunification services were terminated is not a change in circumstances requiring the permanency order to be set aside or modified.  Nor is the fact that mother had successfully cared for her sixth child since his birth.  Indeed, "[i]t is the nature of addiction that one must be 'clean' for a much longer period than 120 days to show real reform."  (*In re Kimberly F.* (1997)

6

56 Cal.App.4th 519, 531, fn. 9.)  Further, the bond N.D. had formed with his foster parents—who cared for him since shortly after his birth and wanted to adopt him—contrasted with mother's intermittent absences from N.D.'s life during the reunification period.  Mother failed to show in the juvenile court that returning N.D. to her care would advance N.D.'s interests in permanency and stability.

Mother's alternative request to resume reunification services was not an option for the juvenile court.  Services are limited to a maximum 18-month time period, calculated from " 'the date the child was originally taken from the physical custody of his or her parent[.]'  (§ 366.21, subd. (g)(1).)"  (*In re Zacharia D*. (1993) 6 Cal.4th 435, 446.)  N.D. was taken from mother's physical custody upon his discharge from the hospital in June 2018, which was more than 18 months before mother filed her section 388 petition.

### III. DISPOSITION

The January 14, 2020 selection and implementation order is affirmed.

_____

Grover, J.

**WE CONCUR:**

_____

Bamattre-Manoukian, P. J.

_____

Danner, J.

**H047842 -** *In re N.D.; MDSS v. E.D. et al.*