Filed 7/21/22  In re I.J. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re I.J. et al., Persons Coming Under the Juvenile Court Law. | C094618 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>C.J.,<br><br>Defendant and Appellant. | (Super. Ct. Nos. JD239105, JD239106, JD239107) |

C.J. (mother) challenges the juvenile court's denial of a Welfare and Institutions Code section 388[1] petition for modification through which mother sought to have two of her children, A.J. and I.J., placed with her or, in the alternative, further reunification

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

services. We conclude that the trial court acted within its discretion in denying the petition and affirm the orders of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2016, after a substantiated referral for neglect and testing positive for drugs, mother agreed to informal supervision services. From December 19, 2016, to December 14, 2017, the children were voluntarily placed with their maternal aunt Celina L. while mother engaged in those services. After mother successfully completed informal services, mother was given sole custody of the children; she agreed not to allow her boyfriend Jacob J. (father to two of her children) to visit if he was under the influence of drugs and alcohol.

On June 20, 2018, after two more referrals were made to the Sacramento County Department of Child, Family and Adult Services (the department), the department filed section 300, subdivision (b) petitions on behalf of mother's three children: A.J. (four years old), I.J. (nine years old), and S.J. (seven months old). Relative to mother, the department alleged she had a diagnosed mental illness for which she was not taking her medication, the result of which was, she threatened to kill herself and the children, a statement heard by I.J.

The department further alleged mother failed to protect the children from her boyfriend, Jacob J., whose ongoing substance abuse placed the children at substantial risk of physical harm, abuse, and/or neglect. The department also alleged mother failed to protect the children from the ongoing incidents of domestic violence between mother and Jacob J. At the detention hearing, the court placed the children with Celina L., and ordered reunification services for mother. The jurisdiction/disposition hearing was continued repeatedly and thus not held until January 9, 2019. At the hearing, the juvenile court sustained the petition and adjudged the children to be dependents of the court. The court removed the children from mother's custody and ordered reunification services for mother.

2

In March 2019, the department filed section 387 petitions on behalf of the children, alleging the relative caregivers with whom the children were placed were no longer willing to care for the children.  The children were removed from that home and placed into foster care.  A relative placement hearing was then set for April 3, 2019, at which time I.J. and A.J. were placed with their paternal grandparents, while S.J. remained in foster care.

On June 26, 2019, at the six-month review hearing, the juvenile court ordered I.J. and A.J. to remain out of mother's custody and continued services for mother.  At the 12-month review hearing in September 2019, the court ordered the same.

On September 18, 2019, the court presided over a combined six and 12-month review hearing regarding S.J.  At the conclusion of that hearing, the court ordered S.J. to remain out of mother's custody but continued mother's reunification services.

By the 18-month review hearing, which took place on March 4, 2020, mother had made significant progress in her services.  She was taking her medication to manage her mental illness, she completed her parenting education classes, and was able to demonstrate limit-setting and redirection with her children during visitation.  Mother's visits with A.J. and I.J. had progressed to overnights, where she demonstrated her ability to meet their needs.  At the department's recommendation, the court ordered A.J. and I.J. returned to mother's custody under continued department and court supervision.

S.J., however, was not returned to mother's custody.  S.J. was two years old.  He had limited overnight visits with mother and was bonded to his foster parents.  The court thus continued the 18-month review hearing with regard to S.J. to April 15, 2020, and continued mother's reunification services.

At the April 15, 2020 hearing regarding S.J., the court determined that mother had failed to demonstrate the ability to consistently manage daily stressors, her mental health, and to set appropriate boundaries to ensure the protection and safety of the children.  The

3

court terminated mother's reunification services and set a hearing pursuant to section 366.26.

On August 3, 2020, the department filed section 387 petitions alleging A.J. and I.J. were at risk of suffering serious physical harm in mother's care. The department further alleged placement with mother was no longer effective in the protection of the children. In support of the petition, the department alleged mother could no longer provide adequate care for the children because she was abusing methamphetamines, engaging in erratic behaviors, not consistently participating in drug testing or treatment, allowing her wife Tammy L., (identified by the department as an unauthorized and unsuitable individual) to be left alone with the children, and failing to ensure A.J. was in counseling. Two days later, the court ordered the children removed from mother's custody.

The jurisdiction/disposition hearing on the department's section 387 petitions relative to A.J. and I.J. was held on January 14, 2021. After hearing mother's testimony, the court found mother received approximately 24 months of reunification services and failed to benefit from those services. The court noted mother tested positive for methamphetamine in May and July 2020, stopped participating in drug treatment, and stopped drug testing. The court also found mother abandoned stable housing and continued to allow contact between the children and Tammy L. after the department directed her not to allow such contact. The court thus ordered A.J. and I.J. to remain out of mother's custody and terminated her reunification services.

On April 23, 2021, mother filed section 388 petitions as to all three children, asking the court to provide her with further reunification services or, in the alternative, return the children to her care. Prior to the hearing on that petition, the department issued a report recommending permanent plans for all three children: adoption for S.J. and legal guardianship for A.J. and I.J. (because I.J. said he did not want to be adopted). The department nevertheless found all three children to be specifically adoptable. The

department subsequently changed their recommendation for A.J. and I.J., recommending adoption.

The contested hearing on the section 388 petition was held on July 21, 2021.[2] In support of her petition, mother called Yadira S. Yadira works in the urinary analysis department at WellSpace Health. Yadira recognized mother as someone who came in "often" for urine testing. Mother signed her testing slip with a last name beginning with the letter L. Yadira testified to mother having seven clean drug tests in June and July 2021.

Mother testified she was compliant with her psychotropic medications, she saw a psychiatrist every month, and regularly worked with a counselor. Mother admitted to a gap in her counseling, but said it was because her counselor was promoted. Mother said she committed to recovery in January 2021 after her reunification services were terminated and she began engaging in services on her own. She began an outpatient program for drug rehabilitation, and she began drug testing voluntarily. Mother acknowledged she previously started treatment programs that she did not finish, but this was the longest time she had been in a program. She knew her drug of choice was methamphetamine and she accepted that she was "powerless against [her] addiction." Learning her triggers and her coping skills was now a priority. Her "clean date" was sometime at the end of November 2020, though she could not remember the date; she thought it might be November 24.

Mother started drug testing twice a week at WellSpace Health in January 2021; she admitted she failed to test at least once, probably in June 2021 and received a

---

[2] A section 366.26 hearing for S.J. was scheduled the same day. It was continued to September 2021, to be heard with a section 366.26 hearing for A.J. and I.J.

"positive test" only when she was taking prescription medication.[3] She also testified that she began attending Alcoholics Anonymous/Narcotics Anonymous groups in January and February 2021, but stopped and did not return until late May 2021. She said she was "having issues with the app" during that time. Mother found her sponsor in June 2021 but had to wait 30 days before she could begin working the program with her sponsor.

The hearing continued on July 29, 2021. Mother was still in outpatient treatment and planned to participate in "the aftercare program" when she completed the outpatient program. She was not sure how long the aftercare program would last. She prepared a relapse prevention plan two weeks before the continued hearing, in which she identified her triggers, catalogued her coping skills, and listed her support people. Her support people included her sponsor, brothers, sister-in-law, sober friends from high school, and her wife Tammy L.

Mother explained that she was still married to Tammy L. but intended to divorce her. She testified her children were now her priority and she knew that being with Tammy jeopardized her relationship with her children. Mother acknowledged knowing Tammy had felony convictions when she married her, but did not think it was "that big of a concern in [her] case" because Tammy was a staff member at the treatment facility where mother was a patient.

Mother admitted to using methamphetamines on November 23, 2020, and admitted to signing her drug test slips with her married name and not the name with which she was registered at the testifying facility. She also admitted that, despite A.J.

---

[3] The parties stipulated the lab slips could be admitted into evidence as evidence of the dates mother recalled going to WellSpace Health to test, and that mother recalls receiving the results indicated on the "report." They were not admitted for the truth or accuracy of the results.

and I.J. being taken from her custody a second time in August 2020, she did not begin drug treatment until January 2021.

The family's social worker testified that mother lied about her drug use and the children's contact with Tammy L. The social worker performed a background check on Tammy and confirmed some of her prior felony convictions were drug related. The social worker also observed mother had difficulty meeting A.J. and I.J.'s needs when they were returned to her care.

At the conclusion of the hearing, the court expressed its optimism that mother was clean; however, the court found mother's recovery was "still at an outpatient services level," and her "relapse prevention plan [was] not sufficiently robust or internalized enough for [the court] to conclude that it would constitute an actual change of circumstances rather than changing circumstances." Moreover, the court was "not convinced that . . . mother now has the ability to simultaneously handle the three children." The court also found mother did not have suitable housing available for the children. The court thus denied her request to have the children returned.

Additionally, the court could not find a legal basis for ordering more services for mother, as she requested in the alternative. But the court also found no evidence that after all the services already provided to mother, it would be in the children's best interests to provide more. Accordingly, the court denied that portion of her petition as well.

## DISCUSSION

On appeal, mother contends the juvenile court erred when it denied her section 388 petition. We are not persuaded.

A.   *Applicable Law and Standard of Review*

"Section 388 allows a parent to petition to change, modify, or set aside any previous juvenile court order. (§ 388, subd. (a).) 'The petitioner has the burden of showing by a preponderance of the evidence (1) that there is new evidence or a change of

7

circumstances *and* (2) that the proposed modification would be in the best interests of the child.'  [Citation.]  '[T]he change in circumstances must be substantial.'  [Citations.]

"The section 388 modification procedure is an ' "escape mechanism" when parents complete a reformation in the short, final period after the termination of reunification services but before the actual termination of parental rights.'  [Citations.] We review a juvenile court's denial of a section 388 petition for abuse of discretion, and review its factual findings for substantial evidence.  [Citation.]  We may disturb the exercise of the court's discretion only when the court has made an unreasonable or arbitrary determination.  [Citation.]"  (*In re J.M.* (2020) 50 Cal.App.5th 833, 845-846.)

B.      *Analysis*

        1.  *Return of the Children to Mother*

"A parent establishes a substantial change of circumstances for purposes of section 388 by showing that, during the period between termination of reunification services and the permanency planning hearing, he or she has resolved the previously unresolved issues supporting juvenile court jurisdiction.  (See *In re A.A.* (2012) 203 Cal.App.4th 597, 611-612 ['The change in circumstances' must be such that 'the problem that initially brought the child within the dependency system must be removed or ameliorated.  [Citation.]  The change in circumstances or new evidence must be of such significant nature that it requires a setting aside or modification of the challenged order.'].)"  (*In re J.M., supra*, 50 Cal.App.5th at p. 846.)

Here, the children were initially removed from mother's custody on June 22, 2018, because she was not managing her mental illness and failed to protect her children from her boyfriend who was engaging in domestic violence and abusing drugs.  While A.J. and I.J. were returned to mother in March of 2020, their stay with her was short lived as they were removed again in August 2020 because mother was using drugs, failing to engage in services, and leaving the children alone with her wife, a person with whom the department had told her the children were not allowed to have contact.

8

Between August 2020 and January 2021, mother made no effort to address her drug addiction and failed to end her relationship with Tammy L. While there was evidence at the hearing that mother had been clean since January 2021, she had not truly acknowledged her addiction until then, and by the time of the section 388 hearing was still in an intensive outpatient program. Mother was attending Narcotics Anonymous meetings but found her sponsor less than 30 days before the hearing, and as of the date of the hearing had not yet begun working the 12 steps of her program. Thus, while it appears mother was finally committed to working on her drug addiction, it is evident she had not resolved the problem before the section 388 hearing.

Mother also continued to put her children in the care of adults who were unsafe, particularly her romantic partners. Mother was no longer in a relationship with Jacob J., but mother married and remained married to Tammy L., a felon whom the department deemed unsafe for the children. Mother knew Tammy L. had prior felony convictions, including some for drugs, but maintained a relationship with Tammy nonetheless. When the department told mother not to leave the children alone with Tammy, mother ignored their request and then lied to cover up her conduct. Even after mother committed to getting clean in January 2021, she remained married to Tammy. She testified that she intended to divorce Tammy and she said she knew her relationship with Tammy jeopardized her relationship with the children. However, as recently as two weeks before the section 388 hearing, mother listed Tammy as a support person on her relapse prevention plan, suggesting Tammy remained in her life.

We conclude the juvenile court acted within its discretion in finding that mother had failed to show a change in circumstances and denying mother's section 388 petition.

*2. Additional Reunification Services*

Mother asked the court, in the alternative, to grant her additional reunification services. The court had no statutory authority to grant mother additional services.

9

Except in limited circumstances, whenever a child is removed from a parent's custody, the juvenile court is required to order reunification services. (§ 361.5, subd. (a).) Where the child is three years of age or older at the time of the initial removal, court-ordered reunification services shall be provided beginning with the dispositional hearing and ending 12 months from the date the child entered foster care. (§§ 361.49, 361.5, subd. (a)(1).) Notwithstanding these limitations, the court may extend services up to a maximum time period not to exceed 18 months from the date the child was originally removed from the physical custody of the parent if it can be shown the permanent plan of return to the parent with the child being "safely maintained in the home" can be achieved within the extended time period. (§ 361.5, subd. (a).)

Finally, in certain very limited circumstances not present in this case, the juvenile court may extend services to a date 24 months from the original removal of the child pertaining to parents in substance abuse programs, parents who were either a minor parent or a nonminor dependent parent, parents recently released from incarceration or institutionalization, and parents who have been in the custody of the United States Department of Homeland Security. (§§ 361.5, subd. (a)(4), 366.22, subd. (b).)

Here, the children were initially removed from mother's custody on June 22, 2018; mother was immediately given services. Those services were continued at the January 2021 jurisdiction/disposition hearing. In March 2020, two of the children, A.J. and I.J. were returned to mother for approximately six months, during which time the court ordered mother to participate in a family maintenance plan. (*Carolyn R. v. Superior Court* (1995) 41 Cal.App.4th 159, 165-166 [maintenance services and reunification services both count toward maximum].) However, A.J. and I.J. were again removed from mother's custody in August 2020, two months after the 24-month maximum services was reached.

Thus, when services were finally terminated on January 14, 2021, mother had received more than 24 months of services and she was no longer eligible to receive

10

services.  And, because there is no claim the department failed to offer reasonable services, the court correctly denied mother's section 388 petition and refused to offer her additional services.

## DISPOSITION

The orders of the juvenile court are affirmed.


                                                      _____/s/_____
                                                      EARL, J.


We concur:


_____/s/_____
HULL, Acting P. J.


_____/s/_____
HOCH, J.


11